Lynn S. **CHERTKOV,** Petitioner,

v.

**OFFICE OF PERSONNEL MANAGEMENT,** Respondent.

No. 93–4001.

United States Court of Appeals, Federal Circuit.

March 31, 1995.

Rehearing Denied April 27, 1995.

---

Joseph L. Bianculli, Bianculli & Hoffman, Arlington, VA, argued for petitioner.

Jeanne E. Davidson, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued for respondent. With her on the brief were Frank W. Hunger, Asst. Atty. Gen., and David M. Cohen, Director. Of counsel was Murray M. Meeker, Office of Gen. Counsel, Office of Personnel Management.

Before PLAGER, LOURIE, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Lynn S. Chertkov seeks review of the June 30, 1993 decision of the Office of Personnel Management (OPM), which debarred her from participating as a provider in the Federal Employees' Health Benefits Program (FEHBP). Because OPM's decision was not a "determination" within the meaning of 5 U.S.C. § 8902a(g)(1) (1988), the right to appeal to this court set forth in 5 U.S.C. § 8902a(g)(2) does not apply. Therefore, we dismiss the appeal for lack of jurisdiction.

## BACKGROUND

OPM debarred Chertkov after the Department of Health and Human Services (HHS) excluded her from participating in certain programs under the Social Security Act (e.g., Medicare and Medicaid).[1] The HHS exclusion followed the State of Maryland's prosecution of Chertkov for health-care fraud crimes. The authority under which OPM acted was its regulation which reads in part: "Debarment or suspension of a participant in a program by one agency shall have governmentwide effect." 5 C.F.R. § 970.100(a) (1992). Pursuant to 5 U.S.C. § 8902a(g)(2), Chertkov seeks to have us review OPM's decision. OPM contends that its decision here does not come within § 8902a(g)(2) and that we thus are without jurisdiction to hear the appeal. Before delving into the particulars of the undisputed facts of the case, we first will set forth the statutory and regulatory environment relating to OPM debarment decisions.

### A. Statutory and Regulatory Background

#### 1. The Common Rule on Debarments

As part of his initiative to curb fraud, waste and abuse in federal programs, President Reagan, on February 18, 1986, ordered that to the extent permitted by law "[e]xecutive departments and agencies ... participate in a system for debarment and suspension from programs and activities involving Federal financial and nonfinancial assistance

---

1. HHS has the authority to exclude health care providers under 42 U.S.C. §§ 1320a–7, 1320a–7a (1988), both of which are discussed below.

and benefits." Exec.Order 12549, § 1(a), 51 Fed.Reg. 6370, 6370. In particular, the President ordered that "[d]ebarment or suspension of a participant in a program by one agency shall have government-wide effect." *Id.* To ensure this was possible, the President ordered that a current list of debarred individuals and organizations be maintained and that the list be made available to all departments and agencies. *Id.* § 5, 51 Fed. Reg. at 6371. The idea behind the President's order was to ensure that persons found to be unfit to deal with one government agency could not simply begin dealing with a different government agency, and to avoid the need for duplicative debarment proceedings in more than one federal executive department or agency.

Executive Order 12549 chartered the Office of Management and Budget (OMB) with issuing guidelines to executive departments and agencies regarding the implementation of the President's debarment initiative. *Id.* § 6, 51 Fed.Reg. at 6371. The guidelines thereafter issued by OMB were prepared in regulation format as a minimum model rule to facilitate their use by the executive departments and agencies in preparing their own regulations, tailored to their respective needs. 52 Fed.Reg. 20360, 20363–69 (May 29, 1987). This minimum model rule is referred to as the "common rule" on debarments. The common rule covers both original and collateral debarments. First, it sets forth procedures for debarment actions where the person has not yet been debarred by any department or agency (i.e., original debarments). Subpart C, § ——.300–.330, 52 Fed.Reg. at 20366–67. Second, it provides that a person debarred by any department or agency pursuant to minimum due process procedures is debarred from participating in any covered transaction in any department or agency for the period set by the agency that first debarred the person. Subpart B, § ——.200, 52 Fed.Reg. at 20365. This is the collateral debarment rule.

Various executive departments and agencies incorporated the common rule into their respective regulations, most with amendments intended to tailor the common rule to meet their particular needs. The first such adoption occurred on May 26, 1988, when twenty-seven agencies adopted their version of the common rule. 53 Fed.Reg. 19160, 19161. One agency adopting the common rule at this time was HHS. *Id.* at 19200 (codified at 45 C.F.R. Part 76 (1993)). On January 30, 1989, six more agencies adopted their version of the common rule. 54 Fed. Reg. 4722, 4722. OPM was not involved in either of these two rule-making exercises. However, as will be discussed below, OPM did eventually adopt the common rule in 1993.

2. *Federal Employees Health Benefits Amendments Act of 1988*

Before OPM had taken any action to implement the common rule, Congress, on November 14, 1988, enacted the Federal Employees Health Benefits Amendments Act of 1988, Pub.L. No. 100–654, 102 Stat. 3837 (FEHBA) (title I of which is codified at 5 U.S.C. § 8902a). One of the purposes of the FEHBA was "to protect FEHBP participants from unfit health care providers, providers who have had their licenses suspended, and providers who have committed fraud or other types of financial misconduct." H.R.Rep. No. 917, 100th Cong., 2d Sess. 2 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5385, 5385. In furtherance of this purpose, the FEHBA established a list of grounds upon which a health care provider may be debarred from participating in the FEHBP. 5 U.S.C. §§ 8902a(b) and (c).[2] The grounds listed in §§ 8902a(b) and (c) notably do not include a debarment by another executive department or agency. The FEHBA also sets forth procedural protections in debarment actions. For example, OPM may not make a decision debarring a person without providing that person with notice and an opportunity for a hearing. 5 U.S.C.

---

**2.** The grounds are similar to those set forth in the statute under which providers are excluded from participating in certain programs such as Medicare and Medicaid under the Social Security Act. *See* 42 U.S.C. §§ 1320a–7 and 1320a–7a

(1988); H.R.Rep. No. 917, at 3, 1988 U.S.C.A.A.N. at 5386 ("This provision is similar to the exclusion authority under the Medicare and Medicaid programs.").

§ 8902a(g)(1). Finally, the FEHBA provides for judicial review in the United States Court of Appeals for the Federal Circuit of a final debarment decision. 5 U.S.C. § 8902a(g)(2).[3]

### 3. *The 1993 Appropriations Act*

In the Treasury, Postal Service and General Government Appropriations Act of 1993, Congress provided:

> [E]xcept as may be consistent with regulations of the Office of Personnel Management prescribed pursuant to 5 U.S.C. 8902a(f)(1) and (i), no payment may be made from the Employees Health Benefit Fund to any physician, hospital, or other provider of health care services or supplies who is, at the time such services or supplies are provided to an individual covered under chapter 89 of title 5, United States Code, excluded, pursuant to section 1128 or 1128A of the Social Security Act (42 U.S.C. 1320a–7–1320a–7a), from participation in any program under title XVIII of the Social Security Act (42 U.S.C. 1395 et seq.)....

Pub.L. No. 102–393, 106 Stat. 1729, 1755 (1992) (1993 Appropriations Act).[4] The "Employees Health Benefit Fund"—made up of contributions from both employees and the government—is the source for all payments to approved health benefits plans. 5 U.S.C. § 8909(a)(1) (1988). The health benefits plans, in turn, pay for, or reimburse, expenses for health services. 5 U.S.C. § 8901(6) .(1988). Thus, the effect of the 1993 Appropriations Act was to forbid any payment from the Fund to a health care provider excluded under the Social Security Act. *See* 5 U.S.C. § 8902a(a)(1)(A) (defining the term "provider").

### 4. *5 C.F.R. Part 970*

Shortly after passage of the 1993 Appropriations Act (on February 4, 1993), OPM issued a notice to the public of the proposed adoption of the common rule on debarments. 58 Fed.Reg. 7052. Adoption of the common rule was to be accomplished through an amendment to title 5 of the C.F.R., which would add a new Part 970. OPM's notice stated that adoption of the common rule was required by Executive Order 12549 and that the common rule was consistent with the intent of the 1993 Appropriations Act. *Id.* The notice further informed the public that "OPM [would] not begin to take its own nonprocurement debarment and suspension actions, which will have governmentwide effect, until OPM incorporates the specific statutory provisions of [the FEHBA]." *Id.* In other words, OPM informed the public that it would not be taking any original debarment actions until it included in its version of the common rule the procedural protections afforded under the FEHBA.[5] On May 17, 1993, OPM published Part 970 as a final rule, which was effective upon being published. 58 Fed.Reg. 28759.

### B. *Facts of the Case*

Insofar as they relate to the issue of this court's jurisdiction, the underlying facts are not in dispute. Chertkov is a licensed clinical social worker who has practiced for nineteen years, primarily rendering services to abused and neglected children and dysfunctional families. She currently is in private practice and serves, among other persons, federal employees and their dependents who are beneficiaries under the FEHBP.

---

**3.** To implement the FEHBA, OPM, on October 30, 1989, published interim regulations governing debarments. 54 Fed.Reg. 43939 (codified at 5 C.F.R. Part 890, Subpart J (1994)). OPM stated that the interim regulations were not comprehensive. In particular, OPM stated that it had focused its "initial efforts on those areas of administration that needed to be formalized and in place at the earliest date possible." 54 Fed.Reg. at 43939. OPM thus indicated that additional regulations implementing the FEHBA would be forthcoming. *Id.* Additional regulations implementing FEHBA have not, to date, been proposed.

**4.** The Appropriations Acts for 1994 and 1995 contain the same provision. Pub.L. No. 103–123, 107 Stat. 1226, 1248 (1993) (1994 Appropriations Act); Pub.L. No. 103–329, 108 Stat. 2382, 2407 (1994) (1995 Appropriations Act).

**5.** OPM has not yet proposed regulations implementing the procedural protections of the FEHBA in either Part 890, Subpart J, as discussed above in footnote 3, or in Part 970.

### 1. *Criminal Proceedings in the State of Maryland*

In 1991, the State of Maryland charged Chertkov with one count of misdemeanor Medicaid fraud and one count of conspiracy to commit felony Medicaid fraud. The charges resulted from alleged improper Medicaid billings submitted by the Montgomery County Family Life Center, Inc., a mental health clinic in Montgomery County, Maryland, with which Chertkov was affiliated from 1982 to 1991.

Chertkov entered into a plea agreement with the State. Thereafter, on March 21, 1991, in Montgomery County Circuit Court, pursuant to the agreement, she entered an "Alford" plea, under which she effectively pleaded guilty to the charges against her.[6] Following her plea, she was sentenced (1) to three years of incarceration, with all but 179 days suspended (to be served on home detention with work release); (2) five years probation; and (3) 1,500 hours of community service.

Upon completion of her period of home detention, Chertkov requested that the Circuit Court strike the previously entered plea and impose probation before verdict, pursuant to Maryland Code Article 27, § 641 (1992 Replacement Vol. of the 1957 Annotated Code). On April 25, 1992, the Circuit Court granted Chertkov's request, over the State's objection. Accordingly, it struck her convictions from the record and reduced her sentence to probation before verdict.[7]

### 2. *Exclusion by HHS (i.e., The Original Debarment)*

On August 14, 1992, HHS notified Chertkov that she had been excluded from participation in any program under the Social Security Act for a period of ten years.[8] HHS also informed Chertkov of her right, if dissatisfied with the decision, to request a hearing before an administrative law judge.[9] Although Chertkov exercised that right, nothing in the record indicates that she sought review of the HHS exclusion decision in federal court.[10] HHS published notice of its exclusion of Chertkov in its September 1992 and April 1993 Cumulative Sanctions Report.

### 3. *Debarment by OPM (i.e., OPM's Collateral Debarment)*

OPM became aware of Chertkov's exclusion by HHS as a result of its regular review of the Cumulative Sanctions Report. Also, on March 22, 1993, OPM received from the Maryland State Attorney General materials regarding Chertkov's criminal prosecution in the State of Maryland.[11] As a result, by

---

**6.** *See North Carolina v. Alford,* 400 U.S. 25, 35–38, 91 S.Ct. 160, 166–68, 27 L.Ed.2d 162 (1970).

**7.** Subsequently, the State appealed the Circuit Court's April 25, 1992 order on the ground that the Circuit Court did not have the authority to set aside a conviction based on a negotiated plea agreement. On February 2, 1993, the Court of Special Appeals agreed with the State, and reversed the Circuit Court's order. *Maryland v. Chertkov,* 95 Md.App. 104, 619 A.2d 556. On June 9, 1994, the Maryland Court of Appeals, the state's highest court, dismissed the State's original appeal on the ground that the State did not have standing to appeal the Circuit Court's order in the first place. *Chertkov v. Maryland,* 335 Md. 161, 642 A.2d 232, 234–37. In dicta, however, the Court of Appeals agreed with the Court of Special Appeals that the Circuit Court was without authority to set aside a conviction resulting from a negotiated plea agreement. *Id.* 642 A.2d at 237–39. It is not clear from the record in this appeal whether, after the decision of the Maryland Court of Appeals, the Montgomery County Circuit Court reinstated the original negotiated plea agreement in accordance with the dicta of the Court of Appeals, or whether the Circuit Court let its reconsidered judgment of April 25, 1992 stand.

**8.** The grounds upon which HHS excluded Chertkov are not before us in this case. The undisputed fact is that there was an HHS exclusion.

**9.** A party excluded by HHS from participating in programs under the Social Security Act is entitled to notice and a hearing on the matter. 42 U.S.C. §§ 1320a–7(f), 1320a–7a(c)(2).

**10.** Where an HHS exclusion is pursuant to 42 U.S.C. § 1320a–7, the excluded person is entitled to judicial review in United States district court. 42 U.S.C. § 1320a–7(f)(1) (review as provided for in 42 U.S.C. § 405(g)). However, where the exclusion is pursuant to 42 U.S.C. § 1320a–7a, review is in the United States Court of Appeals for the circuit in which the person resides, or for the circuit in which the provider's conduct occurred. *Id.* § 1320a–7a(e).

**11.** As of March 22, the Court of Special Appeals had rendered its decision reversing the Circuit Court's order striking Chertkov's convictions;

letter dated May 18, 1993 (one day after 5 C.F.R. Part 970 went into effect), OPM notified Chertkov of her proposed debarment from participating as a provider in the FEHBP. OPM's letter proposing debarment stated that its action was being taken under 5 C.F.R. Part 970, and that the action was being taken out of respect for HHS's decision to exclude Chertkov from certain Social Security Act programs. On June 30, 1993, OPM issued its final debarment decision, again stating that the action was being taken under the authority of 5 C.F.R. Part 970, and out of respect for the exclusion decision of HHS.

## DISCUSSION

Chertkov seeks to have us review OPM's final decision under 5 U.S.C. § 8902a(g)(2). The government contends that we lack jurisdiction. We agree with the government.

■ It is a "well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress." *Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976). The jurisdiction of this court, therefore, is "limited to those subjects encompassed within a statutory grant of jurisdiction." *Livingston v. Derwinski,* 959 F.2d 224, 225 (Fed. Cir.1992) (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982)). This court may not, even in the interests of justice, extend its jurisdiction beyond the congressional mandate. *See Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988); *Livingston,* 959 F.2d at 225. "Although often effecting a seemingly harsh result, courts cannot disregard jurisdictional requirements established by Congress out of sympathy for particular litigants." *Butler v. Derwinski,* 960 F.2d 139, 141 (Fed.Cir.1992); *see Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980) ("[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."). When jurisdiction is lacking, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex Parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868).

■ Our interpretation of the jurisdictional statute, as with any statute, begins with the language employed by Congress. *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1579 (Fed.Cir.1990) (citing *Mallard v. United States Dist. Ct. for S. Dist. of Iowa,* 490 U.S. 296, 300–01, 109 S.Ct. 1814, 1817–18, 104 L.Ed.2d 318 (1989)). By the terms of the FEHBA, this court was given jurisdiction to review certain debarment decisions of OPM. This grant is set out at 5 U.S.C. § 8902a(g)(2), which provides in pertinent part that "any person adversely affected by a final decision under [5 U.S.C. § 8902a(g)(1)] may obtain review of such decision in the United States Court of Appeals for the Federal Circuit." A "final decision under [5 U.S.C. § 8902a(g)(1)]", in turn, is "a determination under [5 U.S.C. §§ 8902a(b) or (c)] adverse to a provider of health care services or supplies...." 5 U.S.C. § 8902a(g)(1). Section 8902a(b) regards debarment determinations and sets forth the grounds upon which such debarments can rest. Section 8902a(c) regards government claims against health care providers who overcharge; the section sets forth monetary penalties and also provides for debarment.

Neither § 8902a(b) nor § 8902a(c) includes, as a basis for a FEHBA debarment, a collateral debarment decision, i.e., a debarment decision not based directly upon the underlying conviction or bad conduct of the provider but instead solely upon a debarment decision made by another federal executive department or agency. In other words, the decisions under § 8902a(b) and § 8902a(c), the decisions which this court has been empowered to review, are debarment decisions that originate with OPM; they are not collateral debarment decisions. Therefore, the

---

however, as of that date the Maryland Court of Appeals had not yet rendered its decision holding that the State had no authority to appeal from the Circuit Court's order.

language of the statute belies Chertkov's contention that this court has been given jurisdiction to review all OPM debarment decisions, whether or not they originated with OPM.

Any doubt as to the correctness of the conclusion that § 8902a(g)(2) does not encompass collateral debarment decisions was eliminated by the 1993 Appropriations Act. Congress there stated that "no payment may be made from the Employees Health Benefit Fund to any physician, hospital, or other provider of health care services or supplies who is, at the time such services or supplies are provided to an individual covered under chapter 89 of title 5, United States Code, excluded, pursuant to section 1128 or 1128A of the Social Security Act (42 U.S.C. 1320a–7—1320a–7a), from participation in any program under title XVIII of the Social Security Act (42 U.S.C. 1395 et seq.) . . . ." In so stating, Congress in effect mandated that OPM give collateral effect to HHS exclusions (debarments). Further, we think it fairly can be said that Congress recognized the existence of a debarment authority which was separate and distinct from that provided for in the FEHBA—namely, Executive Order 12549. *See Cannon v. University of Chicago,* 441 U.S. 677, 698–99, 99 S.Ct. 1946, 1958, 60 L.Ed.2d 560 (1979) ("[O]ur evaluation of congressional action . . . must take into account its contemporary legal context."). Finally, our interpretation of the judicial appeal provision of the FEHBA gives effect to both that provision and the 1993 Appropriations Act. *See Highland Falls–Fort Montgomery Cent. Sch. Dist. v. United States,* 48 F.3d 1166, 1171–72 (Fed.Cir.1995) (interpreting organic statute and later-enacted appropriations laws so as to give effect to both). In sum, OPM's decision in this case was not a decision under the FEHBA. Rather, the decision was one made under the

mechanism (i.e., the common rule) established by Executive Order 12549, the use of such alternative mechanism being mandated by the 1993 Appropriations Act.[12] Accordingly, we hold that this court is without jurisdiction to review OPM's decision.[13]

## CONCLUSION

For the foregoing reasons, Chertkov's appeal is dismissed for lack of jurisdiction.

## COSTS

Each party shall bear its own costs.

***DISMISSED.***

---

**12.** Further, we think it significant that the 1994 and 1995 Appropriations Acts contain the same mandate. Pub.L. No. 103–123, 107 Stat. at 1248; Pub.L. No. 103–329, 108 Stat. at 2407. By the time of these enactments, OPM had adopted the common rule on debarments, 5 C.F.R. Part 970, although, as discussed in footnote 5 above, OPM had not yet proposed regulations implementing the procedural protections of the FEHBA. In the face of this action, we think

that Congress's enactment in the 1994 and 1995 Appropriations Acts indicates its intent to forbid automatically any payments by OPM to providers who have been excluded by HHS from participating in Social Security Act programs.

**13.** We express no views on what appeal rights, if any, are available to an appellant in Chertkov's position.