RADER, Circuit Judge.
 

 Dazey Corporation (Dazey) filed an “emergency motion” with the United States District Court for the Northern District of Illinois, Eastern Division, seeking a declaration of its rights under a settlement agreement that had terminated its prior litigation with National Presto Industries, Inc. (Presto). After the district court ruled in Presto’s favor on the merits of the motion, Dazey moved to dismiss the action for lack of subject matter jurisdiction. The district court concluded that it had improperly exercised jurisdiction over. Dazey’s motion and, accordingly, dismissed the proceeding. Because the district court lacked subject matter jurisdiction over the settlement agreement, this court affirms.
 

 BACKGROUND
 

 This case involves frying pots. In November 1990, Presto sued Dazey for design patent and trade dress infringement by Dazey’s “Quick Fry” fryer, model DQF-40. After the district court entered a preliminary injunction against Dazey and this court affirmed,
 
 see National Presto Industries v. Dazey Corp.,
 
 No. 90 C 06614, 1990 WL 291494 (N.D.Ill.Dec. 17,
 
 1990), aff'd,
 
 949 F.2d 402, 1991 WL 193450 (Fed.Cir. Oct.1, 1991) (table), the parties settled their dispute.
 

 The settlement agreement gave Dazey latitude to make a redesigned “Quick Fry”
 
 *-6
 
 fryer, model DCF-31, so long as the new fryer met two conditions. First, the new pot could not use the color “black (defined to mean pan tone black C or equivalent).” Second, the pot had to use a lid that covered the bright metal container trim. The settlement agreement acknowledged that such a fry pot would not infringe any of Presto’s rights.
 

 The parties also agreed to a consent judgment, which the district court entered on March 18, 1992. The consent judgment permanently enjoined Dazey from selling the “Dazey Quik Fry model DQF-40, or any colorable imitations or facsimiles thereof.” The consent judgment did not, however, incorporate the settlement agreement or any of its terms.
 

 Later in 1992, Dazey began selling its newly designed DCF-31 fryer. Presto complained that the DCF-31 pot violated the parties’ settlement agreement. In particular, Presto believed that the new pot’s color was “pan tone black C or equivalent.”
 

 On December 16, 1992, Dazey filed an “emergency motion” in the United States District Court for the Northern District of Illinois, Eastern Division, under civil action number 90 C 6614, the same docket number assigned to the original action between Presto and Dazey. The emergency motion sought a declaration that Dazey was in compliance with the parties’ settlement agreement. In particular, Dazey asked the district court to declare that the DCF-31 fryer was not black within the meaning of the parties’ settlement agreement. Dazey’s motion did not contain any specific allegations of jurisdiction.
 

 On March 31, Í994, after receiving extensive evidence and briefing on Dazey’s motion, a magistrate judge recommended denial of the motion. Specifically, the magistrate judge found that Dazey’s new color selection was so close to its original color selection that it was “pan tone black C or equivalent,” the only color forbidden by the settlement agreement. The district court adopted the magistrate judge’s recommendation and denied Dazey’s motion.
 
 National Presto Indus. v. Dazey Corp.,
 
 No. 90 C 6614, 1994 WL 194066 (N.D.Ill. May 13, 1994). Dazey appealed the adverse decision, but this court dismissed the appeal as premature.
 
 National Presto Indus. v. Dazey Corp.,
 
 39 F.3d 1195, 1994 WL 558826 (Fed.Cir. Sept.28, 1994) (table).
 

 In the interim between the district court’s order and this court’s dismissal, the United States Supreme Court decided
 
 Kokkonen v. Guardian Life Insurance Co. of America,
 
 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1996), which addresses the inherent power of a district court to interpret and enforce a settlement agreement that terminated litigation pending before it. In its dismissal order, this court suggested that the district court might wish to consider its own jurisdiction over Dazey’s emergency motion in light of
 
 Kokkonen.
 
 On remand from this court, Dazey moved the district court for dismissal of the emergency motion for lack of subject matter jurisdiction.
 

 Rather than ruling immediately on Dazey’s dismissal motion, the district court set out its interpretation of
 
 Kokkonen
 
 and asked the parties for further submissions.
 
 National Presto Indus. v. Dazey Corp.,
 
 No. 90 C 6614, 1994 WL 675125, at (N.D.Ill. Nov.29, 1994). Specifically, the district court posited that its jurisdiction over the emergency motion depended on whether the motion invoked some independent basis of federal jurisdiction, such as the court’s contempt power.
 
 Id.
 
 An independent basis of federal jurisdiction would allow the court to exercise ancillary jurisdiction over the non-federal settlement agreement. However, even at this late stage in the proceedings, the district court could not determine whether Presto considered Dazey to be in violation of the consent judgment. Thus, the district court ordered Presto to indicate whether it was alleging that Dazey’s DCF-31 fryer was a “colorable facsimile!] or imitation!]” of the DQF-40 under the consent judgment.
 

 After an investigation, Presto alleged that Dazey’s DCF-31 fryer violated the consent judgment. Presto also filed a separate ae
 
 *-5
 
 tion, No. 94 C 6598, in which it alleged that Dazey’s violation of the court’s consent judgment warranted contempt proceedings. The district court treated Presto’s submissions as a motion for contempt in the original action, No. 90 C 6614. Accordingly, the district court referred Presto’s new contempt allegations, together with the issue of subject matter jurisdiction over the emergency motion, to a magistrate judge.
 

 On September 18, 1995, the magistrate judge issued a report and recommendation against Presto on both issues. On the jurisdictional issue, the magistrate judge found that Dazey’s emergency motion did not implicate the district court’s consent judgment either explicitly or implicitly. Thus, she determined that the district court’s prior findings on the settlement agreement lacked subject matter jurisdiction and could not stand. The magistrate judge also concluded that Presto had not proved that Dazey’s DCF-31 fryers violated the court’s injunction.
 

 On December 28, 1995, the district court adopted the magistrate judge’s report and recommendation in full. Accordingly, the district court dismissed its own proceedings on Dazey’s emergency motion for lack of subject matter jurisdiction and vacated its prior findings on the settlement agreement. The district court also denied Presto’s motion for contempt. Presto appeals the portion of the district court’s order concerning subject matter jurisdiction.
 

 DISCUSSION
 

 Presto’s Standing to Appeal
 

 This court may not consider an appeal unless the appellant has standing to appeal.
 
 See Boeing Co. v. Commissioner of Patents and Trademarks,
 
 853 F.2d 878, 880, 7 USPQ2d 1487, 1488 (Fed.Cir.1988). A party shows standing to appeal by demonstrating, among other things, that it suffered some actual or threatened injury as a result of the appealed action.
 
 Id.; Penda Corp. v. United States,
 
 44 F.3d 967, 971, 33 USPQ2d 1200, 1203 (Fed.Cir.1994),
 
 cert. denied,
 
 — U.S. —, 115 S.Ct. 1962, 131 L.Ed.2d 853 (1995). The threat of an unfavorable determination in future litigation due to the res judicata effect of an adverse judicial determination may be such an injury.
 
 See Electrical Fittings Corp. v. Thomas & Betts Co.,
 
 307 U.S. 241, 242, 59 S.Ct. 860, 860-61, 83 L.Ed. 1263 (1939) (prevailing party had standing to appeal where district court found no infringement, but improperly adjudged the patent valid);
 
 see also HCA Health Servs. of Va. v. Metropolitan Life Ins. Co.,
 
 957 F.2d 120, 124 (4th Cir.1992).
 

 In this case, the trial court dismissed the emergency motion after making substantive findings. This decision both deprives Presto of the benefit of its victory under those vacated findings and allows Dazey a second opportunity to litigate these issues. Presto thus suffered a genuine adverse effect sufficient to establish its standing to appeal.
 
 See, e.g., Electrical Fittings,
 
 307 U.S. at 242, 59 S.Ct. at 860-61.
 

 Contrary to Dazey’s argument before this court, the district court did, in fact, hold that Dazey’s DCF-31 fryer violated the settlement agreement. As the magistrate judge explained, the very purpose of her March 31, 1994, report and recommendation, which was fully adopted by the district court, was to “explain the court’s conclusion that the color Dazey utilizes on its fryer pots does, in fact, violate the terms of the settlement agreement.” The report further explains: “Dazey may understand that its [DCF-31 eolor] formulation will not pass muster” and “Presto may be comforted in knowing that Dazey will not produce [a pot with the exact color used on the DCF-31].”
 

 A few statements in the magistrate judge’s report and recommendation about the findings not granting a complete victory for either side did not undercut the report’s ultimate conclusion that Dazey violated the settlement agreement. Indeed, the magistrate did not fully adopt Presto’s interpretation of the settlement agreement, which would have precluded Dazey from using any color that customers might characterize as
 
 *-4
 
 “black.” Notwithstanding the magistrate’s candid reasoning, the report clearly determined that the exact color used on Dazey’s DCF-31 fryer did not comply with the settlement agreement. In sum, the report gave Presto a victory, the potential loss of which conveys standing to appeal.
 

 The District Court’s Jurisdiction to Decide Dazey’s Emergency Motion
 

 This court reviews an appeal for subject matter jurisdiction as a question of law.
 
 See Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux,
 
 24 F.3d 1368, 1371, 30 USPQ2d 1621, 1622 (Fed.Cir.1994). Presto, the party seeking jurisdiction, bears the burden of showing jurisdiction.
 
 Id.
 
 24 F.3d at 1372.
 

 The Constitution gives Congress the authority to set forth and limit the jurisdiction of federal courts.
 
 See Aldinger v. Howard,
 
 427 U.S. 1, 15, 96 S.Ct. 2413, 2420-21, 49 L.Ed.2d 276 (1976);
 
 Allied Corp. v. United States Int'l Trade Comm'n,
 
 850 F.2d 1573, 1578, 7 USPQ2d 1303, 1306 (Fed.Cir.1988). Without jurisdiction, federal courts are powerless to make findings or otherwise decide a case.
 
 See The Mayor v. Cooper,
 
 73 U.S. (6 Wall.) 247, 250, 18 L.Ed. 851 (1867);
 
 Johns-Manville Corp. v. United States,
 
 893 F.2d 324, 326 (Fed.Cir.1989). A court without jurisdiction must simply announce its lack of jurisdiction and dismiss the proceeding.
 
 See id.
 
 at 327.
 

 A federal district court may not interpret and enforce a settlement agreement that terminated prior litigation unless it has some federal jurisdictional basis for enforcing a contract between parties.
 
 Kokkonen,
 
 511 U.S. at 378, 114 S.Ct. at 1675-76 (“Enforcement of the settlement agreement ... requires its own basis for jurisdiction.”). Neither the Federal Rules of Civil Procedure nor any statute give federal courts the inherent power to interpret and enforce settlement agreements, even those that pertain to litigation originally pending in federal courts, absent some independent basis of jurisdiction.
 
 See id.
 
 at 378, 114 S.Ct. at 1675 (“Neither the Rule [providing for dismissal by stipulation of the parties] nor any provision of law provides for jurisdiction of the court over disputes ■ arising out of an agreement that produces the stipulation.”).
 

 In this case, Presto asserts that the district court’s ancillary jurisdiction provides a potential source of jurisdiction for the emergency motion. Federal courts may assert ancillary jurisdiction
 
 [1]
 
 over some matters, otherwise beyond their competence, that are related to subject matter properly before them.
 
 See id.
 
 at 379, 114 S.Ct. at 1676 (using the phrase ancillary jurisdiction “in the very broad sense in which that term is sometimes used”). The Supreme Court identified two general circumstances under which a district court may exercise ancillary jurisdiction over a settlement agreement between parties: “(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent;” and “(2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.”
 
 Id.
 
 (citations omitted). Neither source of ancillary jurisdiction is available in this case.
 

 Under the first general circumstance identified in
 
 Kokkonen,
 
 a federal district court may exercise ancillary jurisdiction over a non-federal matter (such as a settlement agreement) if the issues presented are “factually interdependent” with a federal matter before the court.
 
 See, e.g., United Mine Workers of Am. v. Gibbs,
 
 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (federal courts have jurisdiction to consider ancillary non-federal claims when the non-federal and federal matters “derive from a common nucleus of operative fact”). Entry of judgment, however, terminates both the
 
 *-3
 
 federal ease and any basis for federal jurisdiction over the contractual agreement which occasioned the termination.
 
 See Peacock v. Thomas,
 
 — U.S. —, —, 116 S.Ct. 862, 867, 133 L.Ed.2d 817 (1996) (once the original federal dispute is dismissed, claims that at one time might have been brought as “ancillary” to that dispute may no longer be brought). Thus, for federal courts to enforce the settlement agreement, the dispute must involve some ongoing source of federal jurisdiction to which the non-federal matter may be considered ancillary.
 
 See id.
 

 Presto urges that the court’s contempt power served as an independent basis of jurisdiction in the present ease. According to Presto, the emergency motion invoked the court’s contempt power and thus provided jurisdiction for the district court also to consider the factually-related settlement agreement. Even after final judgment a district court retains ongoing jurisdiction to consider violations of its orders and judgment.
 
 See, e.g., Cooter & Gell v. Hartmarx Corp.,
 
 496 U.S. 384, 396, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990) (recognizing that a court’s contempt power continues after the principal suit has been terminated). However, this court concludes that the emergency motion did not invoke the district court’s contempt power. Therefore, this court need not decide whether a district court’s contempt power, which is limited in scope, is sufficiently robust to support ancillary jurisdiction over non-federal matters.
 

 The record in this case shows that neither Dazey’s emergency motion nor the district corat’s proceedings on that motion invoked the district court’s contempt power. First, Presto’s letters to Dazey, which formed the basis of Dazey’s alleged apprehension of suit, mention only the settlement agreement, not the consent judgment. More importantly, Dazey’s emergency motion itself requests relief only under the settlement agreement. In particular, Dazey asked the district court to “determine whether the color of the Dazey DCF-31 fryer is ‘black (defined to mean pan tone C or equivalent)’ within the meaning of paragraph 3a of the Settlement Agreement.” Later- in the same motion, Dazey “asks the Court to construe the rights of the parties under the Settlement Agreement ... [and] clarify and confirm that Dazey is complying with the Settlement Agreement.” Although the title and introduction of the emergency motion might suggest that the district court’s consent judgment is at issue, close inspection of the motion itself reveals that the sole declaratory relief sought by Dazey concerned the meaning of paragraph 3a of the settlement agreement, not the consent judgment.
 
 See Andrews v. United States,
 
 373 U.S. 334, 338, 83 S.Ct. 1236, 1239, 10 L.Ed.2d 383 (1963) (the substance of a party’s pleadings, not the title employed, controls the issues to be adjudicated);
 
 United States v. Griffin,
 
 782 F.2d 1393, 1399 (7th Cir.1986) (“[A] court is entitled to disregard labels and treat pleadings for what they are.”);
 
 see also Miller v. Transamerican Press, Inc.,
 
 709 F.2d 524, 527 (9th Cir.1983) (to determine the type of motion involved, courts look at the substance, not the title). Thus, Dazey’s pleadings did not invoke the district court’s contempt power.
 

 Nor does this court detect in the parties’ behavior or the district court’s proceedings any indication that the consent judgment was at issue anytime during consideration of the emergency motion. The magistrate judge perceived that only the settlement agreement was before the court. In her final report and recommendation, she indicated: “Defendant Dazey Corporation has moved for a declaration that it did not violate the terms of that Settlement Agreement by manufacturing a fryer (a small kitchen appliance) in a particular dark charcoal-grey or black shade.” She further stated: “The narrow issue presented by this motion is whether the Dazey Chefs Fryer, Model No. DCF-31, is colored black as defined in the parties’ agreement.”
 

 Likewise, when presented with the appeal from the original emergency motion proceeding, this court recognized that the only issue before the district court related to the settlement agreement.
 
 See National Presto,
 
 1994 WL 558826, at *1 (“Specifically, Dazey want
 
 *-2
 
 ed to know if the color of its DCF-31 fryer was in violation of the settlement agreement which barred manufacture of fryers of a particular black color.”).
 

 From the record, this court concludes that the only issues before the district court at the time it made its substantive findings on the emergency motion related to Dazey’s compliance with the settlement agreement, not the consent judgment. In fact, on November 16, 1994, more than six months after completing its proceedings on the merits of Dazey’s emergency motion, the district court still could not tell whether Presto was even alleging that Dazey had violated the consent judgment. Not until November 28,1994, did Presto finally state that Dazey violated the district court’s consent judgment and seek a finding of contempt.
 
 [2]
 
 This tardy allegation and motion do not retroactively vest the district court with jurisdiction to make findings it completed more than six months earlier.
 
 See Newman-Green, Inc. v. Alfonzo-Larrain,
 
 490 U.S. 826, 830, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989) (“The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.”);
 
 Federal Deposit Ins. Corp. v. Elefant,
 
 790 F.2d 661, 667 (7th Cir.1986) (pendent subject matter jurisdiction cannot be based on a federal question presented after the suit has been removed from state court);
 
 Denberg v. United States R.R. Retirement Bd.,
 
 696 F.2d 1193, 1197 (7th Cir.1983) (“Jurisdiction cannot be obtained retroactively.”);
 
 see also Boelens v. Redman Homes, Inc.,
 
 769 F.2d 504, 512 (5th Cir.1985) (where plaintiffs complaint failed to state a federal question, plaintiff could not add such a federal question after trial in order retroactively to create a jurisdictional basis for a favorable jury verdict). Cf
 
 . Caterpillar, Inc. v. Lewis,
 
 — U.S. —, —, 117 S.Ct. 467, 477, 136 L.Ed.2d 437 (1996).
 

 Finally, Presto urges that the district court’s contempt power, even if not formally invoked until later, was practically put into play by Dazey’s emergency motion. Because the settlement agreement provided a “safe harbor” from the consent judgment, Presto argues that Dazey’s non-compliance with the agreement necessarily violated the consent judgment. The district court’s findings, however, are directly contrary to this argument. As the district court found, the factual allegations in the emergency motion did not alone imperil the consent judgment. The magistrate judge concluded that even if Dazey’s DCF-31 fryers violated the color prohibition of the settlement agreement, that fact alone did not make those fryers “colorable imitations or facsimiles” of the enjoined DQF — 10. Furthermore, the magistrate judge concluded that “Dazey’s frying pots might violate the settlement agreement and the consent judgment for reasons unrelated to color.” Likewise, the district court, in adopting the magistrate judge’s report, recognized that “a breach of the settlement agreement did not necessarily constitute a breach of the consent judgment.” In sum, the differences between the terms of the settlement agreement and the consent judgment preclude a finding that issues involving the former necessarily implicate the latter.
 

 For all these reasons, this court concludes that Dazey’s emergency motion did not invoke the district court’s contempt power or any other independent basis of federal jurisdiction. Thus, under the first source of ancillary jurisdiction identified in
 
 Kokkonen,
 
 the district court had no federal matter properly before it when it made its findings on the settlement agreement.
 

 Turning to the second source of ancillary jurisdiction identified in
 
 Kokkonen,
 
 a federal court may exercise ancillary jurisdiction over settlement agreements as needed to manage its proceedings, vindicate its authority, and effectuate its decrees.
 
 Kokkonen,
 
 511 U.S. at 378-80, 114 S.Ct. at 1676;
 
 see also Faust v. United States,
 
 101 F.3d 675,
 
 *-1
 
 678 (Fed.Cir.1997). This source of jurisdiction includes the so-called contempt power, the power of the court to enforce its own orders and judgments.
 
 See, e.g., Cooter & Gell,
 
 496 U.S. at 396, 110 S.Ct. at 2456 (recognizing district court’s contempt power). To bring a settlement agreement under this inherent court power, however, an order or judgment of the court must incorporate the settlement agreement such that a breach of the agreement also violates the court’s decree.
 
 See Kokkonen,
 
 511 U.S. at 380-82, 114 S.Ct. at 1677;
 
 Lucille v. City of Chicago,
 
 31 F.3d 546, 548-49 (7th Cir.1994) (court will only enforce settlement agreement to the extent its terms are incorporated into an order or judgment of the court),
 
 cert. denied,
 
 — U.S. —, 115 S.Ct. 1109, 130 L.Ed.2d 1074 (1995);
 
 D. Patrick, Inc. v. Ford Motor Co.,
 
 8 F.3d 455, 460 (7th Cir.1993) (“Standing alone, a settlement agreement is nothing more than a contract; the imprimatur of an injunction is required to render it a consent decree enforceable through contempt.”).
 

 In this ease, the district court did not retain jurisdiction over the parties’ settlement agreement. In fact, the district court did not even mention that agreement or any of its terms in its final judgment order. Thus, ancillary jurisdiction over the agreement is not available under the second prong of
 
 Kokkonen.
 

 This court’s affirmance of this dismissal may seem harsh because Dazey sought dismissal of its own motion only after losing on the merits, but jurisdictional requirements lie at the heart of the court’s power to hear and decide cases. Federal courts simply may not presume to create jurisdiction where Congress declines to do so.
 
 See American Fire & Cas. Co. v. Finn,
 
 341 U.S. 6, 17-18, 71 S.Ct. 534, 541-42, 95 L.Ed. 702 (1951) (defendant who removed case to federal court allowed to challenge jurisdiction after verdict for plaintiff);
 
 see also Chertkov v. Office of Personnel Management,
 
 52 F.3d 961, 966 (Fed.Cir.1995) (“Although often effecting a seemingly harsh result, courts cannot disregard jurisdictional requirements established by Congress out of sympathy for particular litigants.”) (quoting
 
 Butler v. Derwinski,
 
 960 F.2d 139, 141 (Fed.Cir.1992)). Nor can Presto claim any prejudice because
 
 Kokkonen
 
 was decided after the district court’s proceedings on the merits of the emergency motion were already complete. Even prior to
 
 Kokkonen,
 
 the Seventh Circuit had consistently applied the same rule eventually adopted by the Supreme Court.
 
 See, e.g., McCall-Bey v. Franzen,
 
 777 F.2d 1178, 1189 (7th Cir.1985) (absent an independent jurisdictional basis, federal courts do not possess the inherent authority to enforce the terms of a settlement agreement that brings about voluntary dismissal of a lawsuit unless those terms are integrated into some decree of the court).
 

 CONCLUSION
 

 For the reasons set out above, this court concludes that the district court possessed no jurisdiction to proceed on Dazey’s emergency motion. Accordingly, the court properly dismissed the proceedings and vacated its earlier findings on Dazey’s rights under the parties’ settlement agreement.
 

 COSTS
 

 Each party shall bear its own costs.
 

 AFFIRMED.
 

 [1]
 

 . Because Presto's original action was filed before December 1, 1990, this case is not subject to the supplemental jurisdiction statute, 28 U.S.C. § 1367, in which Congress codified the common law doctrines of pendent and ancillary jurisdiction (herein, collectively "ancillary jurisdiction").
 
 See
 
 Judicial Improvements Act of 1990, Pub.L. No. 101-650, § 310(c), 28 U.S.C. § 1367 (1994), note on effective date.
 

 [2]
 

 . Even at this point, Presto urged that final allegations of contempt could only be made after "reasonable opportunity for discovery has been had.” Plainly, if contempt had really been in issue throughout the proceedings on the emergency motion, Presto’s allegations would have been further developed by this time.