# United States Court of Appeals
# for the Federal Circuit

_____

**SYSTEMS DEVELOPMENT CORPORATION,**
*Appellant,*

v.

**JOHN MCHUGH, SECRETARY OF THE ARMY,**
*Appellee.*

_____

2011-1092

_____

Appeal from the Armed Services Board of Contract Appeals in No. 56682, Administrative Judge Monroe E. Freeman, Jr.

_____

Decided: September 26, 2011

_____

HOWELL R. RIGGS JR., Dick, Riggs & Miller, LLP, of Huntsville, Alabama, argued for the appellant. Of counsel was TIMOTHY P. PITTMAN.

JEFFREY A. REGNER, Trial Attorney, Civil Division, Commercial Litigation Branch, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRYANT G. SNEE, Deputy Director. Of counsel on the brief was

ROBERT T. WU, Trial Attorney, Contract and Fiscal Law Division, United States Army Legal Services Agency, United States Department of the Army, Arlington, Virginia.

———————————

Before NEWMAN, PROST, and O'MALLEY, *Circuit Judges.*

PROST, *Circuit Judge.*

This is an appeal from the Armed Services Board of Contract Appeals ("Board") involving Systems Development Corporation's ("SDC") monetary claims stemming from the Army's termination of SDC's contract for convenience. On February 14, 2008, SDC submitted claims to the Army's contracting officer ("CO") for: (1) termination settlement costs, and (2) equitable adjustments arising from alleged defective specifications, bad faith, and breach by the Army of the duties of fair dealing and cooperation ("equitable adjustment claim"). The CO denied all of SDC's claims. The termination settlement costs claim was denied because those costs had already been the subject of a final decision and a subsequent appeal to the United States Court of Federal Claims. The equitable adjustment claims were denied on the merits. SDC appealed the CO's decision to the Board, which dismissed the appeal for lack of jurisdiction. Because we agree that the Board did not have jurisdiction over the claims, we affirm.

BACKGROUND

Effective May 9, 2000, the Army awarded SDC a $430,000 contract for the production of twenty-four circuit card assemblies for HAWK missile systems. Shortly thereafter, a dispute arose between SDC and the Army regarding alleged defects in the specifications for the

circuit card assemblies. The parties attempted to resolve the dispute without success.

On November 13, 2001, SDC requested that the contract be terminated for convenience.[1] Thereafter, on April 29, 2003, despite the fact that the contract had not yet been terminated, SDC submitted a termination settlement proposal form seeking a net payment of $596,123. The proposal did not include a claim for equitable adjustment. Because the claim letter did not provide sufficient information regarding "why SDC feels there has been a constructive termination for convenience of these contracts," the CO advised SDC on June 2, 2003, that he could not issue a final decision.

On February 17, 2004, the CO terminated the contract for convenience and, on April 23, 2004, SDC submitted a new termination settlement proposal for $789,058. This proposal included $19,303 for "other costs" and $14,316 for "expenses," which consisted of the hours of labor required to settle the termination. Again, the proposal did not include any equitable adjustment claims. By letter dated November 12, 2004, SDC offered to reduce its termination settlement proposal to $617,641, which included "other costs" of $15,442 and "settlement expenses" in the amount of $19,316. The termination contracting officer ("TCO") issued a final decision awarding SDC $403,563 to settle the contract termination on

---

[1] Federal Acquisition Regulation 52.249-2, which was incorporated by reference into the contract, provides for termination for convenience of the government. Under this regulation, the government "may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest." 48 C.F.R. § 52.249-2(a) (1996).

March 25, 2005. With respect to the claimed "other costs" and settlement expenses, the TCO determined that certain of SDC's proposed costs actually constituted direct expenses for employees whose full salaries remained charged to the overall G&A expense pool and that there was inadequate support for the remainder. Accordingly, the TCO denied these proposed costs and expenses to avoid double payment.

At this point, SDC had the option of appealing the TCO's final decision to either the Board or the Court of Federal Claims. Under the Contract Disputes Act ("CDA"), a contractor may appeal a decision to an agency board of contract appeals within ninety days of the contractor's receipt of the decision. 41 U.S.C. § 606. Therefore, SDC had until June 23, 2005 to pursue that route. Alternatively, the CDA provides that an action may be filed in the Court of Federal Claims within twelve months of the contractor's receipt of the decision. *Id.* § 609. SDC took no action within § 606's ninety-day timeframe. Instead, SDC filed an action in the Court of Federal Claims on March 24, 2006—just shy of one year after the issuance of the TCO's final decision.

At the Court of Federal Claims, SDC sought, among other things, $19,316 in costs and expenses. In addition, SDC's case at the Court of Federal Claims went beyond appealing issues resolved in the TCO's final decision. For the first time, SDC also sought equitable adjustments of almost $1.7 million consisting of $397,000 for defective specifications; $500,000 for the Army's alleged breach of covenants of fair dealing and cooperation; and $750,000 for the Army's alleged bad faith. The government moved to dismiss, arguing that the Court of Federal Claims did not have jurisdiction to entertain the equitable adjustment claims because the claims had never been submitted

to a CO, a prerequisite to suit in the Court of Federal Claims or review by the Board. *See Arctic Slope Native Ass'n v. Sebelius*, 583 F.3d 785, 793 (Fed. Cir. 2009). On January 31, 2008, while the government's motion was pending, the parties filed a joint stipulation of dismissal pursuant to Rule 41(a)(1)(ii) of the Rules of the Court of Federal Claims ("RCFC"). After the stipulated dismissal was filed, SDC took no further appeal from the TCO's March 25, 2005 final decision.

On February 14, 2008, SDC submitted new claims to the Army CO. SDC again sought $19,316 in termination costs and expenses arising out of the termination for convenience—a cost category that had been disallowed previously by the TCO. In addition, SDC now sought over $7 million in equitable adjustments to the $430,000 contract for defective specifications, the Army's alleged breach of the duty of fair dealing and cooperation, and the Army's alleged bad faith. On September 15, 2008, the CO issued a final decision denying termination settlement costs on the grounds that the claim had already been addressed in the TCO's March 25, 2005 final decision and was not reversed on appeal. Noting that "SDC faces serious problems with regard to its ability to prove its entitlement to and the amount of its alleged damages," the CO denied the equitable adjustment claims on the merits.

SDC timely appealed the CO's September 15, 2008 decision to the Board. The Board separately analyzed the termination settlement costs and equitable adjustment claims and dismissed the appeal on October 15, 2010, on the basis that it lacked jurisdiction to entertain either type of claim. The Board's dismissal of the termination settlement claim was based on SDC's failure to appeal the TCO's March 25, 2005 final decision on those costs to the

Board within the ninety-day limitation in the CDA.  With regard to the equitable adjustment claims, the Board noted that the CDA requires a contractor to submit its claims against the government within six years of accrual of the claim.  41 U.S.C. § 605(a).  The Board found that SDC knew of the basis for its equitable adjustment claims no later than November 13, 2001.  Accordingly, the Board dismissed the equitable adjustment claims because SDC did not assert them before the six-year CDA limitations ran.

This appeal followed.  We have jurisdiction to review the Board's October 15, 2010 final decision under 28 U.S.C. § 1295(a)(10).

## DISCUSSION

We uphold the Board's findings of fact "unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. § 609(b).  We review the Board's legal conclusions, including the Board's determination of jurisdiction, de novo.  *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1369 (Fed. Cir. 2009).  In applying a de novo review, however, we give "careful consideration and great respect" to the Board's legal interpretations in light of its considerable experience in the field of government contracts, *Fruin-Colnon Corp. v. United States*, 912 F.2d 1426, 1429 (Fed. Cir. 1990), including its experience in interpreting the Federal Acquisition Regulation ("FAR"), *Titan Corp. v. West*, 129 F.3d 1479, 1481 (Fed. Cir. 1997).

As noted, the Board dismissed SDC's appeal in its entirety for lack of jurisdiction.  Because the termination settlement costs claim and equitable adjustment claims

implicate separate jurisdictional issues, we address each in turn.

## A

The Board dismissed SDC's claim for termination settlement costs as untimely.  It noted that SDC had previously requested termination settlement costs as part of its termination settlement proposal and that the TCO's March 25, 2005 settlement determination denied those exact costs.  SDC never appealed that determination to the Board.  The Board concluded that it lacked jurisdiction to review costs resolved in a termination settlement decision made more than five years earlier.

The CDA, as discussed above, permits a contractor, following issuance of a final decision, ninety days to appeal to the Board (41 U.S.C. § 606), or twelve months to appeal to the Court of Federal Claims (41 U.S.C. § 609). In order to timely appeal the TCO's decision regarding termination settlement costs to the Board, SDC needed to file its appeal no later than June 23, 2005.  SDC elected, however, to wait until nearly a year later to appeal to the Court of Federal Claims.  It then voluntarily dismissed that appeal.  By that time, the ninety-day period for appealing the March 25, 2005 decision to the Board had long-elapsed.  SDC took no further action to contest the TCO's resolution of its claim for termination settlement costs until it filed the claims underlying the present appeal in 2008.  As a result, the TCO's determination with respect to these costs stands.

SDC's primary argument as to why its current challenge is not foreclosed appears to rest on its contention that the TCO lacked the authority to issue the March 25, 2005 final decision in the first place because SDC's pro-

posed settlement amount ($759,058) was greater than the amount of SDC's contract ($430,000). Under SDC's reasoning, a CO never has the authority to consider any settlement proposal that is greater than the amount of the awarded contract.

It is true that FAR 49.207 limits settlement amounts for fixed-price contracts terminated for convenience such as the contract at issue here. Specifically, "[t]he total amount payable to the contractor for a settlement, before deducting disposal or other credits and exclusive of settlement costs, must not exceed the contract price less payments otherwise made or to be made under the contract." FAR 49.207. While the FAR limits the amount that the CO may award, the FAR does not limit the size of the settlement proposal that may be submitted to a CO. Here, SDC's settlement offer of $759,058 exceeded its contract price by 83%. Regardless, the TCO determined that SDC was entitled to $403,563—an amount below SDC's $430,000 contract price. As such, the TCO clearly had the authority to issue the March 25, 2005 final decision because the awarded settlement amount was below the contract price.

Because its appeal to the Court of Federal Claims was voluntarily dismissed, SDC has never successfully appealed the costs addressed in the TCO's final decision. SDC cannot revive the lapsed settlement cost claim by simply resubmitting a previously resolved claim to a CO years later. The February 14, 2008 termination settlement costs claim is the same claim that SDC submitted on April 23, 2004 and that the TCO resolved on March 25, 2005. Accordingly, we agree that the Board lacked jurisdiction over this claim.

B

We next consider whether the Board had jurisdiction over SDC's claims for over $7 million in equitable adjustments. The CDA states that "[e]ach claim by a contractor against the government relating to a contract . . . shall be submitted [to the CO] within 6 years after the accrual of the claim." 41 U.S.C. § 605(a). Contractor compliance with this statutory time limit on the presentment of a claim to a CO is a jurisdictional prerequisite for any subsequent appeal of the CO's decision on that claim. *See Arctic Slope*, 583 F.3d at 793. Thus, in order for the Board to have jurisdiction over the equitable adjustment claims, they must not have accrued prior to February 14, 2002.

The Board found that SDC's equitable adjustment claims based on the alleged liability of the government for defective specifications, failure to cooperate, and bad faith accrued no later than November 13, 2001. Accordingly, the Board concluded that it did not have jurisdiction over those claims. On appeal, SDC argues that the equitable adjustment claims did not ripen until settlement negotiations between the TCO and SDC reached an impasse. SDC contends that this did not occur until March 25, 2005, when the TCO entered the final decision rejecting SDC's settlement proposal.[2] The government counters that such an impasse is not required for the equitable adjustment claims to accrue.

---

[2]    Before the Board, SDC argued that the equitable adjustment claims did not accrue until June 2, 2003 when the CO refused to issue a decision on SDC's April 29, 2003 settlement proposal. SDC did not argue before the Board that "impasse" was required for the claims to accrue.

1

Under the FAR, a claim accrues on "the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known." FAR 33.201. All three of SDC's equitable adjustment claims seek damages arising out of allegedly defective specifications contained in the May 9, 2000 contract. Claim one alleges that the specifications were defective "at the time of award." Claim two alleges that the Army breached its duty to SDC by "continuously exhorting SDC to perform" the contract despite the defective specifications. Claim three alleges bad faith by the Army in failing to correct the defective specifications.

Applying FAR 33.201, the Board concluded that SDC's equitable adjustment claims accrued more than six years before SDC presented them to the CO. Specifically, the Board found that the alleged defects in the specifications were present in the contract at the time of award in 2000. Pointing to a letter from SDC' s president, Virginia Gilchrist, to the Army, the Board found that SDC actually knew the specifications were defective no later than July 26, 2000. In that letter, Ms. Gilchrist explained that the information provided in the specifications was "of insufficient quality to effectively manufacture" the circuit card assemblies. The Board also found that the events giving rise to SDC's allegations of bad faith and failure to cooperate arose prior to July 2001. In particular, the Board found that the defects in the specifications and the Army's failure to correct those defects led SDC and its principal subcontractor to stop ordering parts for the contract and to seek a termination for impossibility in July 2001. The Board further found that SDC's actual knowledge in 2001 of the basis for equitable adjustment claims and the fact

that it had incurred injury as a result of the defective specifications and the government's failure to cure the defects was further established by a November 13, 2001 letter. That letter stated that "SDC cannot continue to absorb the financial impacts caused by the Government's failure to provide the required data" and that it had "already expended a significant amount of time and resources . . . attempt[ing] to come up with 'work-arounds' to these problems." In view of the record, the Board concluded that SDC's equitable adjustment claims accrued no later that November 13, 2001. We agree.

Despite knowing of the basis for its claims in 2000 and 2001, SDC made no attempt to seek equitable adjustments until its appeal of the TCO's final decision to the Court of Federal Claims. As discussed above, that court did not have jurisdiction over the claims because they had never been presented to a CO. Had SDC submitted the claims to a CO at that time, they would have been timely. Instead, SDC inexplicably waited until February 14, 2008—more than six years after accrual of the equitable adjustment claims—to first present its $7 million claim on the $430,000 contract to the CO.

2

SDC does not argue that the Board misapplied FAR 33.201. Rather, SDC contends that our precedent holds that a claim does not accrue until there is an impasse in negotiations between the contractor and the government. SDC, however, misapprehends our precedent. Impasse is not required for SDC's equitable adjustment claims to accrue.

In support of its impasse theory, SDC points to *Rex Systems, Inc. v. Cohen*, 224 F.3d 1367 (Fed. Cir. 2000). In

*Rex Systems*, we considered when a submission by a contractor to a CO meets the definition of a "claim" for the purposes of the CDA. *See also James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537 (Fed. Cir. 1996). We acknowledged that not all contractor submissions to a CO are claims. *Rex Sys.*, 224 F.3d. at 1372 ("[A]ny non-routine submission by a contractor meets the definition of a claim if it is: (1) a written demand; (2) seeking as a matter of right; (3) the payment of money in a sum certain."). In this line of cases, we clarified that termination settlement proposals submitted under the termination for convenience clause of the FAR generally are not CDA claims. Under certain circumstances, however, a termination settlement proposal may ripen into a claim. *Id.* For example, as we explained in *Ellett*, a termination settlement proposal may ripen into a CDA claim when the parties' negotiations reach an impasse. 93 F.3d at 1543-44. Contrary to SDC's assertion, nothing in these cases addressed situations beyond termination settlement proposals. Indeed, we emphasized that the FAR "anticipate[s] the submission of claims independently of the termination settlement proposal." *Id.* at 1548. We have never indicated that such independently submitted claims require an impasse.

SDC's argument that an impasse was required for its equitable adjustment claims to accrue misses the mark because it is undisputed that the equitable adjustment claims were not part of SDC's termination settlement proposal. Thus, these claims were not even a part of the negotiations that led to the impasse on March 25, 2005. Rather, SDC's equitable adjustment claims were wholly separate from its termination settlement proposal. Nothing precluded SDC from presenting them to a CO as soon as SDC knew of their basis as provided in the FAR. *See* FAR 33.201-11.

In sum, we conclude that the Board did not have jurisdiction to entertain either the termination settlement costs claim or the equitable adjustment claims. The termination settlement costs claim should have been presented to the Board within ninety days of receipt of the TCO's decision. *See* 41 U.S.C. § 606. The equitable adjustment claims were submitted to the CO outside the six-year statute of limitations in 41 U.S.C. § 605(a).

## Conclusion

The Board's dismissal of SDC's appeal for lack of jurisdiction is affirmed.

## **AFFIRMED**