# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Kellogg Brown & Root Services, Inc. | )  ASBCA No. 58492 |
| | ) |
| Under Contract No. DAAA09-02-D-0007 | ) |

APPEARANCES FOR THE APPELLANT:
Scott M. Heimberg, Esq.
Thomas P. McLish, Esq.
  Akin Gump Strauss Hauer & Feld LLP
  Washington, DC

APPEARANCES FOR THE GOVERNMENT:
Raymond M. Saunders, Esq.
  Army Chief Trial Attorney
Brian E. Bentley, Esq.
CPT Anthony F. Schiavetti, JA
  Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE YOUNGER ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

This sponsored appeal arises from a contract with the Army (Army or government) to provide dining facility services for troops in Iraq. The government has moved to dismiss for lack of subject matter jurisdiction, contending that the prime contractor, Kellogg Brown & Root Services, Inc. (KBR), failed to submit the certified claim to the contracting officer within the applicable six-year statute of limitations. In opposition, KBR principally argues that the government's motion is predicated upon the wrong accrual date because it ignores a lengthy dispute between KBR and its subcontractor that prevented submission of a request for payment at an earlier date. In any event, KBR urges that the present claim should relate back to an earlier claim, submitted over three years previously, that was based upon the same operative facts and was withdrawn. In addition, KBR argues, the statute of limitations should be equitably tolled because any delay is attributable to the time taken in "thoroughly vetting" its subcontractor's claim. We grant the government's motion and dismiss the appeal.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

1. By date of 14 December 2001, the Army's Rock Island Contracting Center awarded Contract No. DAAA09-02-D-0007 (the contract) to KBR to facilitate the operations of the Logistics Civil Augmentation Program (LOGCAP) by using civilian contractors to provide the Army with mission-essential support services in wartime and

other operations (R4, tab 1 at KFLD-000002). The contract was awarded as a cost-type services contract (*id.*).

2. It is undisputed that, in March 2003, the United States began military operations in Iraq.

3. By date of 13 June 2003, the government issued Task Order 59 to KBR under LOGCAP III. By Task Order 59, KBR was required to perform logistical and life support tasks in compliance with the "V Corps LOGCAP Support Change 02, Statement of Work" in support of Operation Iraqi Freedom (R4, tab 6 at KFLD-000165-66). Task Order 59 was a cost-plus-award-fee task order (*id.* at KFLD-000166).

4. Thereafter, effective 15 June 2003, KBR entered into Master Agreement No. LOGCAP-KU-MA00006 (the Master Agreement) with The Kuwait Company for Process Plant Construction & Contracting k.s.c./Morris Corporation (AUST) PTY LTD (KCPC/Morris), under which KCPC/Morris was to "[p]rovide all bonds, labor, material, equipment, transportation, insurance, supervision, permits, supplies, documentation, inspection, and all other things necessary to provide [full dining facilities] at locations...throughout Kuwait and Iraq." The Master Agreement provided that the site locations for the dining facilities would be specified in Work Releases. The Master Agreement in the record contains Work Release # 1, dated 29 June 2003, for an Army camp north of Tikrit, and Work Release # 2, also dated 29 June 2003, for an Army camp south of Tikrit. (R4, tab 8 at KFLD-000175, KFLD-000177, KFLD-000196-97)

5. By show cause notice to KCPC/Morris dated 24 July 2003, KBR advised that it was "considering terminating the contract" for default. KBR stated that, "[t]o avoid any further termination proceedings, please ensure full contract performance no later than July 28, 2003." (R4, tab 12)

6. By date of 31 July 2003, KBR issued a notice of termination for default to KCPC/Morris for both Work Release # 1 and Work Release # 2. The cited reason for the termination was that, while the show cause notice had required full performance no later than 28 July 2003, KCPC/Morris had "failed to bring conditions to full contract performance as of 31 July 2003." (R4, tab 13) KBR's manager advised KCPC/Morris that "[e]ffective immediately, your company *shall* halt all operations and minimize impact of *all* further costs" (*id.*) (italics and boldface in original).

7. By date of 2 August 2003, KCPC/Morris responded to KBR's notice of termination. KCPC/Morris disputed the factual basis for KBR's action in multiple particulars, characterizing the terminations regarding sites C-1 and C-2 as "unfair, arbitrary and unjustified." (R4, tab 16 at KFLD-000257, KFLD-000259) KCPC/Morris "request[ed] immediate reinstatement of our full contracts at both sites C-1 and C-2 and compensation of lost construction costs, plus a reasonable extension for the completion of

2

our works" (*id.* at KFLD-000259). KCPC/Morris requested a "reply within 24 hours failing which we shall have no option but to seek legal advice, including but not limited to, taking an injunction" (*id.*).

8. Thereafter, KBR directed KCPC/Morris to continue to provide temporary dining facility arrangements during a transition period to a new subcontractor, which period continued until 12 September 2003 (R4, tabs 15, 19 at KFLD-000266).

9. By letter to KBR dated 13 September 2003, KCPC/Morris submitted a detailed, two-volume termination settlement proposal "for Site C 1, Tikrit North…and Site C 2, Tikrit South" (R4, tab 19 at KFLD-000265). KCPC/Morris explained that, as a result of "correspondence and meetings between KBR and the KCPC/Morris Joint Venture, it was determined and agreed that a reasonable settlement acceptable to KCPC/Morris Joint Venture would be to the best interests of all concerned" (*id.* at KFLD-000266).

10. In October 2003, KBR responded to KCPC/Morris with its own settlement proposal, and the parties thereafter undertook to resolve their differences (Appellant's Opposition to the Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction (app. opp'n), ex. 1 at KBR-009722-23). The parties seemingly resolved their differences. By date of 19 May 2004, the parties entered into a settlement agreement, apparently verbal, whereby KBR agreed to pay KCPC/Morris $20,440,000 within 60 days, or by 18 July 2004 (*id.* at KBR-009723-24). Nonetheless, in October 2004, KCPC/Morris brought suit against KBR in the United States District Court for the Eastern District of Virginia, alleging breach of the 19 May 2004 settlement agreement (*id.* at KBR-009719-20).

11. By date of 24 January 2005, KBR and KCPC/Morris executed a settlement agreement resolving the litigation between them. In pertinent part, the parties divided KCPC/Morris' costs into two groups: (a) the "Settlement Amount" of $17,400,000; and (b) KCPC/Morris' "costs incurred and profit related to its performance under the Master Agreement and the termination of the Work Releases…including overhead, G&A, profit and certain costs incurred in preparing requests for payment to the U.S. Government" (app. opp'n, ex. 3 at 3/10). KBR agreed to pay KCPC/Morris the settlement amount, plus any of the other costs that KBR ultimately received from the government, in return for the dismissal of the district court action (*id.*). KBR also agreed to cooperate with KCPC/Morris "to prepare a well-supported invoice or invoices to the U.S. Government" to recover the other costs above the settlement amount, and to submit the invoice to the government (*id.*).

12. By notice to KCPC/Morris dated 24 January 2005, KBR also amended its 31 July 2003 termination for default notice, and converted the termination to one for convenience, effective as of 31 July 2003. KBR stated that it had "found sufficient supporting information to substantiate a Termination for Convenience." (R4, tab 20)

13. Nineteen months later, by letter dated 24 August 2006, KCPC/Morris submitted to KBR a certified claim "for outstanding payments, costs and lost profit associated with the termination for convenience" of the subcontract with KCPC/Morris (R4, tab 21 at KFLD-000272).

14. By letter to the contracting officer dated 3 November 2006, KBR forwarded KCPC/Morris' 24 August 2006 request for payment to the government (R4, tab 21 at KFLD-000271). KBR advised the contracting officer that it "does not certify or comment [on] the validity of these costs and does not have any other supporting documentation for validation" (id.).

15. In response, the Army advised KBR by letter dated 30 May 2007 that "it is KBR's management responsibility to negotiate or discuss claims with Subcontractors. The Government does not comment, in advance, as to whether a claim or certain costs are appropriate. Thus, the Government will not meet with, or correspond directly with KBR Subcontractors." (R4, tab 22)

16. By letter to the Army dated 10 October 2007, KBR submitted "the sponsored claim of [its] subcontractor [KCPC/Morris]." Referring to its 3 November 2006 submission of KCPC/Morris' claim, and the government's response (see statements 14, 15), KBR "disagree[d] and respectfully request[ed] that [the Army] consider the KCPC/Morris claim as [KBR] is submitting it as a sponsor to its subcontractor." (R4, tab 23 at KFLD-000276)

17. By date of 10 January 2008, KBR submitted to the contracting officer, on behalf of KCPC/Morris, a certified claim in the amount of $29,756,530.73 (the 2008 claim) (R4, tab 24).

18. Thereafter, by date of 8 September 2010, KBR withdrew the 2008 claim. KBR advised the Army that "[t]his claim was submitted on behalf of our subcontractor, [KCPC/Morris]. Upon further review of the data provided by KCPC/Morris, KBR has determined that this constitutes a business dispute between KBR and KCPC/Morris and should be resolved in accordance with KBR's subcontract with KCPC/Morris." (R4, tab 28) It is undisputed that the contracting officer had not rendered a decision on the 2008 claim at the time that KBR withdrew it.

19. By date of 2 May 2012, KBR submitted to the contracting officer, on behalf of KCPC/Morris, a certified claim in the amount of $10,464,493 (the 2012 claim) (R4, tab 31 at KFLD-000315). KBR represented that this claim amount constituted the total settlement value of $28,345,137, less the portions of that amount already disbursed to KCPC/Morris as a result of the 2005 settlement, as well as amounts for which KBR had billed the government (see statement 11) (id.). KBR broke the resulting $10,464,493 down into the following components: (a) construction costs, consisting of those for sites

C-1 and C-2 (*see* statement 9), equipment for the barbeque served on 4 July 2003, and miscellaneous costs for expenses such as medical care and travel; (b) meals served, including the 4 July 2003 barbeque; (c) overhead and G&A; (d) profit; and (e) termination settlement proposal resolution costs (R4, tab 31 at KFLD-000328). It is undisputed that the contracting officer did not render a decision on the 2012 claim.

20. On 7 January 2013, KBR filed its notice of appeal from the deemed denial of the 2 May 2012 certified claim.

21. In its subsequent complaint, KBR invoked our "deemed denied" jurisdiction from the contracting officer's failure to render a decision on the 2012 certified claim (compl. ¶¶ 5-10, 27). On the merits, KBR alleged that it:

> [D]etermined that KCPC/Morris is entitled to a total of $28,345,137 as a result of a termination for convenience of the work releases in 2003. The two primary components of the claim are (1) the cost incurred relating to the construction of the dining facilities…up to the point of termination for Sites C-1 and C-2 and (2) compensation for the meals served after the termination at Site C-1 (Tikrit North), the July 4th (2003) Barbeque and [KBR's] direction to serve hot lunches.

(Compl. ¶ 25)

22. The present record reflects significant time gaps between several events regarding this appeal. Thus, the record reflects: (a) a 52-month gap between the end of performance on 12 September 2003 (*see* statement 8) and KBR's submission of the 2008 claim by date of 10 January 2008 (*see* statement 17); (b) a 32-month gap between KBR's submission and withdrawal of the 2008 claim (*see* statements 17-18); and (c) a 19-month delay between KBR's 24 January 2005 conversion of KCPC/Morris' default termination to one for convenience and KCPC/Morris' submission of its claim to KBR (*see* statements 12-13).

## DECISION

In moving to dismiss this appeal, the government points to the Contract Disputes Act statute of limitations, 41 U.S.C. § 7103(a)(4)(A). It provides that "[e]ach claim by a contractor against the Federal Government relating to a contract…shall be submitted within 6 years after the accrual of the claim." The statute does not define the term "Accrual of the claim," but FAR 33.201 does. It provides that a claim accrues on "the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known.

5

For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred."

The government's first argument focuses upon KBR's 2 May 2012 certified claim on behalf of KCPC/Morris (*see* statement 19). Alluding to the "known or should have been known" formulation in FAR 33.201, the Army stresses that KBR cannot base its appeal on the 2012 claim because "KBR was sufficiently aware of the facts fixing liability so as to permit assertion of a claim well before 2 May 2006," which date would be six years before KBR's 2 May 2012 claim. (Government's Motion to Dismiss for Lack of Subject Matter Jurisdiction (gov't mot.) at 6) The government asserts that, "[n]o later than 2 August 2003," the date that KCPC/Morris responded to KBR's notice of termination for default (*see* statement 7), "the events that fixed KBR's liability to KCPC/Morris (the termination) were known by KBR" (gov't mot. at 6). Alternatively, the Army tells us that, if KBR was not "sufficiently on notice of its liability to KCPC/Morris by 2 August 2003," it surely was on notice in January 2005, when it settled its termination dispute with KCPC/Morris (*see* statement 12) (gov't mot. at 7).

The Army's second point is that this appeal is not based upon KBR's 10 January 2008 claim because KBR withdrew that claim (*see* statements 17-18). The Army asserts that KBR's complaint "clearly indicates that the present appeal is taken from the deemed denial" of the 2012 claim (*see* statement 19), and, in any event, KBR's withdrawal of the 2008 claim rendered it a nullity (gov't mot. at 7-9).

In opposing the motion, KBR focuses upon the cost-type nature of Task Order 59 (*see* statement 3). Given this context, KBR argues, "all events, that fix the alleged liability of...the Government...and permit assertion of the claim," FAR 33.201, could only occur upon or after the government's failure or refusal to pay KBR's request for reimbursement of incurred costs. KBR insists that "it is the Government's refusal to reimburse the contractor for...cost[s] when requested, as required by the contract[,] that causes an injury" (app. opp'n at 15). Here, KBR says, "[t]he first time [KBR] requested payment from the Government of any of the costs at issue in this appeal was in November 2006" (*see* statement 14) (app. opp'n at 14). Therefore, KBR reasons, the claim accrued after November 2006 and the May 2012 claim was timely (*id.*).

In addition, KBR also advances two alternative arguments. The first is that the 2 May 2012 claim submission relates back to the 10 January 2008 claim. The second is that the six-year limitations period in 41 U.S.C. § 7103(a)(4)(A) should be equitably tolled because KBR diligently pursued its legal rights, the government was on notice of KBR's claim, and led KBR to believe that its claim had not accrued. (App. opp'n at 23-29)

We conclude that the government's motion to dismiss must be granted. We reach this conclusion for five principal reasons.

*First*, the Federal Circuit has held that the time limits set forth in the Contract Disputes Act "are unequivocally jurisdictional." *Bath Iron Works Corp. v. United States*, 20 F.3d 1567, 1572 (Fed. Cir. 1994); *see also Sys. Dev. Corp. v. McHugh*, 658 F.3d 1341, 1345 (Fed. Cir. 2011) ("Contractor compliance with [the] statutory time limit on the presentment of a claim to a [contracting officer] is a jurisdictional prerequisite for any subsequent appeal"). KBR, as the party seeking to invoke our jurisdiction, bears the burden of proving jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see also Nat'l Presto Indust., Inc. v. Dazey Corp.*, 107 F.3d 1576, 1580 (Fed. Cir. 1997) ("Presto, the party seeking jurisdiction, bears the burden of showing jurisdiction."); *Eaton Contract Services, Inc.*, ASBCA No. 52888 *et al.*, 02-2 BCA ¶ 32,023 at 158,266 ("The burden of proving jurisdiction is on appellant as the party seeking the exercise of jurisdiction in its favor."); *Aries Marine Corp.*, ASBCA No. 37826, 90-1 BCA ¶ 22,484 at 112,847 (same). Here, "[i]n deciding the motion we have presumed undisputed facts to be true." *Raytheon Missile Systems*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,016.

*Second*, KBR must establish that its claim did not accrue before 2 May 2006. The appeal is based upon KBR's 2012 claim, which was submitted by date of 2 May 2012 (*see* statement 19). Hence, if the claim accrued before 2 May 2006, then the appeal must be dismissed.

As indicated, claim accrual "means the date when all events[] that fix the alleged liability...were known or should have been known." FAR 33.201. "To determine when liability is fixed, we start by examining the legal basis of the particular claim." *Gray Personnel, Inc.*, ASBCA No. 54652, 06-2 BCA ¶ 33,378 at 165,475. The legal basis of the 2012 claim, which is the foundation of this appeal, is alleged entitlement to the net costs of performance of the terminated KCPC/Morris subcontract, including costs for construction of sites C-1 and C-2, meals served, overhead, G&A and profit (statement 19). In its complaint, KBR alleges entitlement as follows:

> The two primary components of the claim[, which] are (1) the cost incurred relating to the construction of the dining facilities...up to the point of termination for Sites C-1 and C-2 and (2) compensation for the meals served after the termination at Site C-1 (Tikrit North), the July 4th (2003) Barbeque and [KBR] direction to serve hot lunches.

(Compl. ¶ 25)

Given the legal basis of the claim, we conclude that the claim accrued on 12 September 2003, the date that performance by KCPC/Morris ended (*see* statement 8). On that date, KBR knew that the "events[] that fix the alleged liability of...the Government," FAR 33.201, had transpired. KBR had terminated KCPC/Morris on

31 July 2003 (statement 6). The extended post-termination performance by KCPC/Morris, during the transition to a new subcontractor, had concluded (statement 8).

As the initiator of the termination of KCPC/Morris, KBR undeniably had actual knowledge on 12 September 2003 of the events "that fix the alleged liability" of the government. KBR then knew that the subcontract with KCPC/Morris had been performed and no work remained. KBR had actual knowledge that KCPC/Morris disputed the factual basis for the termination, which KCPC/Morris characterized as "unfair, arbitrary and unjustified" (statement 7). KBR also knew that KCPC/Morris had incurred, and was incurring, costs, having directed its subcontractor to "minimize impact of *all* further costs" (statement 6). KBR also knew that, on 2 August 2003, KCPC/Morris had also demanded "compensation of lost construction costs," as well as other relief (statement 7). In addition, "some injury...occurred" from the termination, inasmuch as the termination interfered with the right of KCPC/Morris, as the party on whose behalf the claim is asserted, to perform its subcontract (*see* statements 6-7).

Even if we were to conclude that the claim did not accrue on 12 September 2003, other evidence in the record would point to accrual well before 2 May 2006, which is six years before submission of the 2012 claim. The record would permit the conclusion that the claim also could be deemed to accrue in 2004 or 2005. Thus, KBR had sufficient actual knowledge of the facts fixing the government's alleged liability to enter into an apparently verbal settlement agreement regarding liability relating to the subcontract in May 2004 and to defend a lawsuit regarding that agreement in October 2004 (statement 10). In addition, in January 2005, KBR had sufficient actual knowledge to enter into a written settlement agreement segregating subcontract costs into a "Settlement Amount" and other costs above that amount (statement 11). KBR also had sufficient knowledge in January 2005 to convert the default termination of KCPC/Morris to a convenience termination (statement 12).

In concluding that the claim accrued on 12 September 2003, we necessarily reject KBR's argument that it only accrued on or after the government's failure or refusal to pay KBR's request for reimbursement of incurred costs (app. opp'n at 15) which was submitted first to the contracting officer on 3 November 2006 (*see* statement 14 ). We reject this approach chiefly because it makes accrual dependent upon KBR's diligence in organizing and submitting its claim. As such, it runs headlong into our holding in *Raytheon Missile Systems*, 13 BCA ¶ 35,241 at 173,018, where we held that "[a]ccrual of a contracting party's claim is not suspended until it performs an audit or other financial analysis to determine the amount of its damages." We relied upon the principle articulated in *United States v. Commodities Export Co.*, 972 F.2d 1266, 1271 (Fed. Cir. 1992) that "a single party [cannot] postpone unilaterally and indefinitely the running of the statute of limitations." We also cannot harmonize KBR's treatment of the

8

3 November 2006 submission as dispositive with our holding in *Raytheon Co., Space & Airborne Systems*, ASBCA No. 57801 *et al.*, 13 BCA ¶ 35,319 at 173,377, that:

> Claim accrual does not depend on the degree of detail provided, whether the contractor revises the calculations later, or whether the contractor characterizes the impact as "immaterial." It is enough that the government [or contractor] knows, or has reason to know, that some costs have been incurred, even if the amount is not finalized or a fuller analysis will follow.

*Third*, claim accrual was not delayed until November 2006 because of a routine request for payment. As indicated, KBR argues that its claim arose from a routine request for payment, which was not disputed until it had "entered into negotiations, litigation, and a settlement agreement with KCPC/Morris, which resulted in the November 2006 submission" (app. opp'n at 22-23).

KBR's claim arose from a non-routine request for payment. FAR 2.101 posits a distinction between routine and non-routine requests for payment. With claims such as KBR's, "jurisdiction…rises and falls based on how its request is classified." *Parsons Global Servs., Inc. ex rel. Odell Int'l, Inc. v. McHugh*, 677 F.3d 1166, 1171 (Fed. Cir. 2012).

"A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim." FAR 2.101. A routine request "is one incurred and submitted 'in accordance with the expected or scheduled progression of contract performance.'" *Parsons*, 677 F.3d at 1170 (citing *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1542-43 (Fed. Cir. 1996)). By contrast, a non-routine request for payment is rooted in events outside the "expected or scheduled progression." A non-routine request is one "seeking compensation because of unforeseen or unintended circumstances." *Ellett*, 93 F.3d at 1543. For prime contractor claims, "[a] common thread [of non-routine requests] is the presence of some unexpected or unforeseen action on the government's part that ties it to the demanded costs." *Parsons*, 677 F.3d at 1171. "The distinction between a routine and non-routine request…is a factual one, dependent on the circumstances in which the requested costs arose." *Id.* at 1170. In *Parsons*, the court discussed cases in which requests had been held to be non-routine. They included: claims for "issuance of a stop work order," citing *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1577 (Fed. Cir. 1995); claims for "damages resulting from the government's termination for convenience," citing *Ellett*, 93 F.3d at 1542-43; and claims for "damages stemming from the government's breach of contract," citing *Ky. Bridge & Dam, Inc. v. United States*, 42 Fed. Cl. 501, 518-19 (1998). *Parsons*, 677 F.3d at 1171; *see also Parsons Global Services, Inc.*, ASBCA No. 56731, 11-1 BCA ¶ 34,632 at 170,654, *aff'd*, 677 F.3d 1166 (Fed. Cir. 2012) (recognizing that "a termination for convenience normally is not a routine occurrence").

KBR's 2012 claim arose from a non-routine request for payment. The claim arose from the termination of the KCPC/Morris subcontract (*see* statement 6). As such, the claim arose from "unforeseen or unintended circumstances," *Ellett*, 93 F.3d at 1543, which were non-routine.

*Fourth*, KBR's 2012 claim does not relate back to its 2008 claim. KBR argues that its 2012 claim "arose from the same set of operative facts as the 2008 claim and gave the Government notice of the outstanding claim," hence making the 2012 claim timely (app. opp'n at 24). In support of this argument, KBR tells us that the present situation is analogous to the relation back of pleadings (*id.* at 23). *See Vann v. United States*, 420 F.2d 968, 974 (Ct. Cl. 1970) (holding an amended petition related back to original petition, which "gave good notice" of the substance of the matters the contractor complained of). For its part, the government urges that "KBR's action in withdrawing its claim in September 2010 [*see* statement 18] is the functional equivalent of a voluntary dismissal under Fed. R. Civ. P. 41," rendering the 2008 claim a nullity (Government's Reply to Appellant's Response to Motion to Dismiss for Lack of Subject Matter Jurisdiction (gov't reply) at 9-10).

We accept the government's argument. We cannot harmonize KBR's position with the Federal Circuit's decision in *Bonneville Assocs. Ltd. P'ship v. Barram*, 165 F.3d 1360 (Fed. Cir. 1999). There, the Federal Circuit held that an appeal to the board was time-barred because it did not relate back to an earlier, timely appeal that the contractor had voluntarily dismissed. In deciding the issue, the court looked to the rule in the federal courts that "the effect of a voluntary dismissal without prejudice pursuant to Rule 41(a) 'is to render the proceedings a nullity and leave the parties as if the action had never been brought.'" *Bonneville*, 165 F.3d at 1364 (quoting *Williams v. Clarke*, 82 F.3d 270, 273 (8th Cir. 1996)).

The same principle applies to KBR's withdrawal of its 2008 claim. KBR withdrew the claim voluntarily (*see* statement 18). KBR did not indicate that it would file the claim anew, and indeed stated that the matter presented "a business dispute between KBR and KCPC/Morris" (*id.*). At the time of withdrawal, the contracting officer had not made any decision on the claim (*id.*).

*Fifth*, there is no basis for equitable tolling. KBR urges that, "even if the claim accrued in 2003 or 2005, the statute of limitations should be equitably tolled" because it diligently pursued its rights. KBR further asserts that the government was on notice of KBR's claim in 2005, when KBR says it furnished the government with a copy of the complaint in the first KCPC/Morris lawsuit (*see* statements 11-12), as well as in the 2006 payment request (*see* statement 14) and the 2008 claim (*see* statement 17). (App. opp'n at 27-29) In addition, focusing upon the government's 30 May 2007 response to KBR's 2006 submission (*see* statement 15), KBR tells us that the government led it to believe

10

that its claim had not accrued (app. opp'n at 29-30). For its part, the government argues that "the factual timeline offered by KBR in its [brief] demonstrates lengthy periods of inactivity" and that KBR has "failed to show that extraordinary circumstances beyond its control prevented KBR from timely presenting KCPC/Morris' claim under the CDA" (gov't reply at 10-11).

It is true that the six-year limitation period in 41 U.S.C. § 7103(a)(4)(A) is subject to equitable tolling. *The Boeing Co.*, ASBCA No. 57490, 12-1 BCA ¶ 34,916 at 171,677-80 (considering more recent decisions and concluding that *Arctic Slope Native Ass'n v. Sebelius*, 583 F.3d 785, 798-800 (Fed. Cir. 2009), *cert. denied*, 130 S. Ct. 3503 (2010) remains good law). Nonetheless, equitable tolling is "allowed...in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). With a record that reflects such lengthy time gaps as this (*see* statement 22), we cannot say that KBR has "actively pursued [its]...remedies." In addition, we have quoted the government's 30 May 2007 response to KBR's submission of KCPC/Morris' claim, and the response will not support any conclusion of trickery or other misconduct (*see* statement 15).

## CONCLUSION

The government's motion to dismiss for lack of subject matter jurisdiction is granted. The appeal is dismissed.

Dated: 18 August 2014

ALEXANDER YOUNGER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

11

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58492, Appeal of Kellogg Brown and Root Services, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals