ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Air Services, Inc. ) | ASBCA No. 59843 |
| ) | |
| Under Contract No. W91QV1-12-C-0059 ) | |

APPEARANCES FOR THE APPELLANT: Donald H. Spence, Jr., Esq.
Cynthia A. Becker, Esq.
Spence & Becker, LLC
Gaithersburg, MD

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
Frank A. March, Esq.
Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE MELNICK
ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Appellant, Air Services, Inc., appeals the contracting officer's 13 February 2015 decision denying its revised Request for Equitable Adjustment (REA) seeking $105,888 in extended general conditions costs. The government moves to dismiss for lack of jurisdiction, arguing that appellant failed to submit a proper claim pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. We deny the motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 26 September 2012, the United States Army Mission & Installation Contracting Command awarded Contract No. W91QV1-12-C-0059 to appellant for the renovation of Building 324 at Fort Belvoir, Virginia (R4, tab 1 at 1-2). The contract was awarded as a direct award under the Small Business Administration's Section 8(a) Program (id. at 29). The contract incorporated numerous standard Federal Acquisition Regulation (FAR) and Defense Federal Acquisition Regulation Supplement (DFARS) clauses, including FAR 52.233-1, DISPUTES (JUL 2002); FAR 52.242-14, SUSPENSION OF WORK (APR 1984); and FAR 52.243-4, CHANGES (JUN 2007) (id. at 9, 27-28).

2. By email dated 7 March 2014 to contracting officer (CO) David P. Wallace and another government official, appellant submitted its change order proposal #8, dated 24 February 2014, seeking a 36-week time extension and an equitable adjustment of $247,900 for extended general conditions costs (R4, tab 49 at 4-19).

3. On 7 May 2014, CO Wallace emailed appellant's senior project manager, Mr. Donald Iak, with the subject line "RE: Building 324- Fire Alarm RFI#17- Response," stating:

> If you are submitting a claim under FAR Clause 52.233-1, please follow procedures in FAR Clause 52[.]233-1, Sub-paragraph (c), (d)(1), (d)(2)(i), (d)(2)(iii), sub-paragraph (3), (e). If you are claiming Request for Equitable Adjustment (REA) please follow procedure under DFARS 252.243-7002. In addition, please submit certified payroll information for contract W91QV1-12-C-0059.

(R4, tab 49 at 2)

4. The paragraphs of the contract's Disputes clause, FAR 52.233-1, cited by CO Wallace's 7 May 2014 email define the term "claim," require that a claim be submitted to the CO for a written decision within six years of accrual, and require that a claim exceeding $100,000 be certified by the contractor. FAR 52.233-1(d)(2)(iii) provides:

> The certification shall state as follows: "I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor."

DFARS 252.243-7002, REQUESTS FOR EQUITABLE ADJUSTMENT (DEC 2012), provides in pertinent part:

> (a) The amount of any request for equitable adjustment to contract terms shall accurately reflect the contract adjustment for which the Contractor believes the Government is liable. The request shall include only costs for performing the change, and shall not include any costs that already have been reimbursed or that have been separately claimed. All indirect costs included in the request shall be properly allocable to the change in accordance with applicable acquisition regulations.

> (b) In accordance with 10 U.S.C. 2410(a), any request for equitable adjustment to contract terms that exceeds the

2

simplified acquisition threshold shall bear, at the time of submission, the following certificate executed by an individual authorized to certify the request on behalf of the Contractor:

> I certify that the request is made in good faith, and that the supporting data are accurate and complete to the best of my knowledge and belief.

_____
(Official's Name)

_____
(Title)

DFARS 252.243-7002, although cited by CO Wallace, was not incorporated into the contract.

    5. Mr. Iak responded to CO Wallace on 7 May 2014, stating in pertinent part:

> I am a little confused by your response below. Are you telling me that you have rejected the REA that we sent to your attention on February 24, 2014?...
> Have you reviewed the REA we submitted on 2/24/14? Are you requesting we revise and resubmit the REA or is it the government's decision to reject it in whole and advise us to file a claim? Please advise.

(R4, tab 49 at 1-2) CO Wallace replied on 8 May 2014, stating that he was only seeking clarification as to whether appellant was submitting a claim or an REA, and noting that appellant's change order proposal did not comply with either FAR 52.233-1 or DFARS 252.243-7002 (*id.* at 1).

    6. CO Maria Belino-Coffeen's 8 May 2014 email to Mr. Iak and others stated:

> Mr. Iak: Good morning. I am reviewing the complete file for this REA/Claim; if am [sic] not mistaken you were informed by Mr. Wallace on how to submit it properly IAW FAR (52.243-1)/DFARs (DFARS 252-243-7001) [sic] whether you are submitting a claim or REA.
>
> As far as documents submitted there were no other supporting documents received from your firm to support claim/REA other than the letter you have submitted.

3

> You need to provide all supporting documentations with
> reference to your claim/REA and this has to be certified.
> Please see below excerpts from DFAR[S], paragraph (b).

(R4, tab 50 at 1) CO Belino-Coffeen proceeded to provide appellant the text of
DFARS 252.243-7002 in its entirety (*id.*).

7. By letter dated 22 May 2014, appellant submitted an REA alleging 26 weeks of
government-caused delay and seeking an equitable adjustment in the amount of $155,733
in extended general conditions costs (R4, tab 51 at 1-4). The REA was certified in
accordance with DFARS 252.243-7002(b) and signed by Mr. Iak (*id.* at 4).

8. On 13 October 2014, appellant's president, Mr. Wilson Mancilla, inquired of
CO Belino-Coffeen as to the status of its REA (R4, tab 54 at 1). Appellant's 13 October
2014 letter stated:

> As you are aware, we have been trying to resolve the
> final issue on this project regarding our general conditions.
> We were informed by Mr. David Wallace on August 18, 2014
> that a determination and recommendation had been made by
> yourself regarding this matter. He did not state what that
> recommendation was....
>
> It has now been seven weeks since you made your
> recommendation, and more than four months since we
> initially submitted on this issue. At this time we respectfully
> request that we be informed of the status of this inquiry. Air
> Services, Inc[.] is very concerned that this matter has been
> possibly overlooked or is not a priority by the government to
> be resolved. This is a very important matter that we need to
> conclude in the near future. Any information or
> communication from you on this matter will be greatly
> appreciated.

(R4, tab 54 at 2) A 28 October 2014 email from Mr. Mancilla to CO Belino-Coffeen
suggests that the government had not responded to appellant's 13 October 2014 letter as
of that date (*id.* at 1).

9. Mr. Mancilla again attempted to contact CO Belino-Coffeen regarding
appellant's REA on 11 November, 14 November, and 19 November 2014 (R4, tab 56).
On 19 November 2014, CO Belino-Coffeen responded by email:

> Mr. Mancilla: Good afternoon, my apologies for being dilatory in responding to your e-mail....
>
> I have reviewed REA submitted by your firm, the supporting docs provide[d] have no specifics other than dollar figures.
>
> We could discuss this REA or I could reply declining submitted REA due to insufficient supporting documents for contracting office rot [sic] make a decision. I rather discuss it with you.

(*Id.* at 1) On 25 November 2014, appellant provided the government with additional documentation (R4, tab 57).

10. By letter dated 13 January 2015, appellant's counsel wrote to CO Belino-Coffeen, stating that appellant had submitted an REA for a contracting officer's final decision (COFD) on 22 May 2014. Appellant's counsel stated that CO Belino-Coffeen, in a 3 December 2014 email, had promised to issue a decision within four weeks, but that no decision had been received by appellant. Appellant's counsel advised the CO that if she failed to issue a final decision by 19 January 2015, appellant would "deem the claim denied" and appeal either to this Board or to the United States Court of Federal Claims. (R4, tab 58 at 2) The 3 December 2014 email referenced in the 13 January 2015 letter is not in the record.

11. CO Belino-Coffeen responded to appellant's counsel by email on 13 January 2015, acknowledging receipt and requesting an additional two weeks to "render my final decision" on the 22 May 2014 REA. Appellant's counsel responded the following day: "We will look for your final decision on or before February 2, 2015. Thereafter, we will deem the decision denied and file the appeal." (R4, tab 60)

12. By letter to appellant dated 2 February 2015, CO Belino-Coffeen stated that upon her review the documents provided by appellant did not support its REA. The CO advised appellant that, absent additional supporting documentation, she was inclined to deny the REA. (R4, tab 62 at 4-5)

13. By email to CO Belino-Coffeen dated 5 February 2015, appellant submitted a revised REA (R4, tab 64). The revised REA reduced the amount sought to $105,888 (*id.* at 6). As with the original REA, the revised REA contained a DFARS 252.243-7002 certification, signed by Mr. Iak, which stated: "I certify that the request is made in good faith, and that the supporting data are accurate and complete to the best of my knowledge and belief" (*id.* at 9).

5

14. CO Belino-Coffeen issued a 13 February 2015 "Contracting Officer's Final Decision to Request for Equitable Adjustment (REA) under W91QV1-12-C-0059" denying appellant's revised REA (R4, tab 66 at 8-20). Although titled a final decision, CO Belino-Coffeen's decision did not provide appeal rights and stated: "REA is denied without prejudice to the contractor. Government is open to have Air Services document submitted for audit by Army Audit Agency to help Air Services better understand Government's position as to why REA is being denied." (*Id.* at 20)

15. Appellant appealed CO Belino-Coffeen's decision on 19 February 2015. The Board docketed the appeal as ASBCA No. 59843.

16. On 22 April 2015, Mr. Mancilla executed a corrected CDA certification on behalf of appellant (app. opp'n, attach.).

## DECISION

The CDA provides that each "claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1). The linchpin of the Board's jurisdiction over a contractor claim is the contractor's submission of a proper claim to the CO for a decision. *Puget Sound Environmental Corp.*, ASBCA Nos. 58827, 58828, 14-1 BCA ¶ 35,585 at 174,371; *MACH II*, ASBCA No. 56630, 10-1 BCA ¶ 34,357 at 169,673. Although the CDA does not define the term "claim," the FAR defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." FAR 2.101. A claim exceeding $100,000 must be certified in accordance with 41 U.S.C. § 7103(b). We determine whether a contractor's submission is a CDA claim on a case-by-case basis, applying a common sense analysis. *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816; *Precision Standard, Inc.*, ASBCA No. 55865, 11-1 BCA ¶ 34,669 at 170,787. We may examine the totality of the correspondence between the parties in determining the sufficiency of a claim. *Lael Al Sahab & Co.*, ASBCA Nos. 58344, 59009, 15-1 BCA ¶ 35,809 at 175,129; *Vibration & Sound Solutions Ltd.*, ASBCA No. 56240, 09-2 BCA ¶ 34,257 at 169,270.

There is no bright-line distinction between an REA and a CDA claim. A claim need not be submitted in any particular format or use any particular wording; the contractor need only submit "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987). The government correctly notes that "an REA submitted to a contracting officer may satisfy the requirements for a claim" (gov't mot. at 4). In *Reflectone, Inc. v. Dalton*, the court determined that "an REA provides an example of a written demand for payment as a

6

matter of right which is not 'a routine request for payment' and, therefore, it satisfies the FAR definition of 'claim.'" 60 F.3d 1572, 1577 (Fed. Cir. 1995) (en banc); *see also id.* at 1578 ("Reflectone's REA is clearly 'a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain.'"); *Zafer Taahhut Insaat ve Ticaret A.S.*, ASBCA No. 56770, 11-2 BCA ¶ 34,841 at 171,392 ("The *Reflectone* decision determined that an 'REA' can serve as a competent claim."). In this appeal, the government does not contend that appellant's revised REA fails to meet the FAR definition of a "claim" (*see* gov't mot. at 4-5; gov't supp. br. *passim*), and we are satisfied that the revised REA meets the requirements of a claim in FAR 2.101.

In addition to meeting the FAR definition of a "claim," however, a claim must be submitted to the CO for a decision. *James M. Ellett Construction Co. v. United States*, 93 F.3d 1537, 1543 (Fed. Cir. 1996). This requires that a claim include a request for a COFD. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010). We have held that a contractor's REA rose to the level of a CDA claim where we have found such a request for a final decision. *See, e.g., Zafer*, 11-2 BCA ¶ 34,841 at 171,391-92; *Environmental Safety Consultants, Inc.*, ASBCA No. 54995, 06-1 BCA ¶ 33,230 at 164,666; *Southern Automotive Wholesalers, Inc.*, ASBCA No. 53671, 03-1 BCA ¶ 32,158 at 158,998.

The government argues appellant's revised REA is not a claim because it fails to request a final decision (gov't mot. at 4-5). Relying on this Board's decision in *Certified Construction Company of Kentucky, LLC*, ASBCA No. 58782, 14-1 BCA ¶ 35,662, the government contends the DFARS 252.243-7002 REA certification and the lack of an express request for a COFD render appellant's revised REA deficient as a CDA claim (gov't mot. at 5-6). Although the government acknowledges appellant's counsel's communications with the CO, the government maintains that the references to a final decision in those communications relate to the original REA, not the revised REA (gov't mot. at 5).

Reviewing the totality of the parties' correspondence, we find that appellant sought a final decision on its revised REA. The government is correct that appellant's revised REA does not itself explicitly request a COFD. A request for a final decision need not be explicit, however, but may be implied from the context of the submission. *Rex Systems, Inc. v. Cohen*, 224 F.3d 1367, 1372 (Fed. Cir. 2000); *Ellett*, 93 F.3d at 1543; *Transamerica Insurance Corp. ex rel. Stroup Sheet Metal Works v. United States*, 973 F.2d 1572, 1576-77 (Fed. Cir. 1992). To the extent that appellant's original 22 May 2014 REA did not indicate, either expressly or implicitly, that appellant was seeking a final decision, appellant subsequently corrected that defect. Appellant's counsel's 13 January 2015 letter to CO Belino-Coffeen unmistakably indicated that appellant was seeking a final decision on its REA (SOF ¶ 10). CO Belino-Coffeen's response acknowledged that appellant was seeking a final decision and requested an extension of time in which to

7

render a final decision. Appellant's counsel's reply stated that it expected a final decision by 2 February 2015. (SOF ¶ 11) Rather than issue a final decision by that date, CO Belino-Coffeen issued a 2 February 2015 letter indicating that she was inclined to deny appellant's REA absent additional information (SOF ¶ 12). Appellant submitted its revised REA in response to that letter (SOF ¶ 13). Contrary to the government's position, in light of the earlier request for a final decision, we find nothing in this series of communications to suggest that appellant was no longer seeking a final decision when it submitted its revised REA. *See Transamerica*, 973 F.2d at 1578 ("This court is loathe to believe that in this case a reasonable contractor would submit to the contracting officer a letter containing a payment request after a dispute had arisen solely for the contracting officer's information and without at the very least an implied request that the contracting officer make a decision as to entitlement.").

The government places undue weight on the fact that appellant's revised REA contained a DFARS REA certification rather than a CDA certification. In *Certified Construction*, upon which the government relies, we first found that the contractor did not explicitly or implicitly request a final decision in the letter at issue. *Certified Construction*, 14-1 BCA ¶ 35,662 at 174,572. We then noted that the letter referred to itself as an REA, and contained a DFARS REA certification. *Id.* Reviewing the totality of the record, we found that at all points after the submission of the REA the contractor did not treat the letter as a claim until the government raised a statute of limitations defense on appeal. *Id.* Accordingly, we held that the contractor had not submitted a claim until the contractor's subsequent letter that explicitly requested a final decision and included a proper CDA certification. *Id.* In reaching that conclusion, the certification provided by the contractor was one piece of evidence in determining whether a proper CDA claim had been submitted. Although the certification provided was relevant to our decision, we did not hold that the presence of a DFARS REA certification is outcome determinative and precludes a finding that a contractor submitted a CDA claim or implicitly requested a final decision.

The record in this appeal does not support the inference that by submitting its revised REA with a DFARS REA certification appellant intended its revised REA to not be a CDA claim. In arguing that appellant's revised REA was not a CDA claim, the government asserts that "[o]ne of the contracting officers e-mailed appellant with instructions for submitting a claim and an REA and asked appellant to clarify whether it was submitting an REA or a claim" (gov't mot. at 5). While CO Wallace's 7 May 2014 email stated that a claim should be submitted under FAR 52.233-1 and an REA under DFARS 252.243-7002 (SOF ¶ 3), appellant's response indicates that it did not understand CO Wallace's instruction (SOF ¶ 5). CO Belino-Coffeen's 8 May 2014 email then directed appellant to certify its "claim/REA" pursuant to DFARS 252.243-7002(b) (SOF ¶ 6). Accordingly, appellant's certifying its revised REA in accordance with DFARS 252.243-7002(b), per CO Belino-Coffeen's instruction, does not suggest that appellant did not intend its revised REA to be a CDA claim.

8

This does not end our jurisdictional analysis. Appellant's revised REA exceeded $100,000 and was therefore required to be certified in accordance with 41 U.S.C. § 7103(b). Section 7103(b)(1) requires a contractor to certify that:

> (A) the claim is made in good faith;
> (B) the supporting data are accurate and complete to the best of the contractor's knowledge and belief;
> (C) the amount requested accurately reflects the contract adjustment for which the contractor believes the Federal Government is liable; and
> (D) the certifier is authorized to certify the claim on behalf of the contractor.

The contract's Disputes clause, FAR 52.233-1, implements the CDA certification requirement and prescribes specific certification language. Certification in accordance with the CDA, where required, is a precondition to this Board's jurisdiction. *HEB International Logistics*, ASBCA No. 59448, 15-1 BCA ¶ 35,917 at 175,579. Absent such certification, the Board lacks jurisdiction to entertain an appeal. *GSC Construction, Inc.*, ASBCA No. 59401, 15-1 BCA ¶ 35,887 at 175,445. A defective certification, however, does not deprive the Board of jurisdiction, although it must be corrected prior to a final judgment. 41 U.S.C. § 7103(b)(3); *Bizhan Niazi Logistic Services Co.*, ASBCA No. 59205, 14-1 BCA ¶ 35,703 at 174,827.

In *Advanced Engineering & Planning Corp.*, ASBCA Nos. 53366, 54044, 03-1 BCA ¶ 32,157, we reserved the question of whether a DFARS REA certification is correctable under the CDA.[1] 03-1 BCA ¶ 32,157 at 158,994. In this appeal, the government does not challenge the curability of appellant's DFARS REA certification, stating that appellant's "certification does appear to meet the standard for a defective certification that may be corrected" (gov't mot. at 4). However, we have a duty to assure ourselves that we have jurisdiction to entertain an appeal, even where the parties have not raised an issue. *Macro-Z Technology*, ASBCA No. 56711, 14-1 BCA ¶ 35,712 at 174,859, *aff'd*, *Macro-Z Technology v. Mabus*, 793 F.3d 1375 (Fed. Cir. 2015). Accordingly, we address whether a DFARS REA certification, submitted with an otherwise proper claim, may be corrected under the CDA.

---

[1] In *Advanced Engineering*, we held that the contractor's REA, which contained a DFARS 252.243-7002 certification, was not certified in accordance with the CDA. 03-1 BCA ¶ 32,157 at 158,994. However, the contractor there had disavowed that its REA was a CDA claim and did not seek to correct its certification. *Id.* at 158,992-94. We therefore did not consider whether a DFARS certification could ever be considered a defective but correctable claim certification under the CDA. *Id.* at 158,994.

9

In determining whether a certification is defective but correctable under the CDA, we consider whether the flaws in the attempted certification "are so significant that, rather than treat the certification as 'defective'...we must effectively conclude that no certification was submitted." *Western Plains Disposal*, ASBCA No. 56986, 11-1 BCA ¶ 34,617 at 170,613 (quoting *SAE/Americon-Mid-Atlantic, Inc. v. General Services Administration*, GSBCA No. 12294, 94-2 BCA ¶ 26,890 at 133,852). In *Western Plains Disposal*, we considered whether a Certificate of Current Cost or Pricing Data pursuant to FAR 15.406-2(a) was correctable under the CDA. 11-1 BCA ¶ 34,617 at 170,613. The certification at issue in *Western Plains Disposal* stated, in pertinent part: "This is to certify that, to the best of my knowledge and belief, the cost or pricing data...submitted...in support of *Equitable Reimbursement and Cost Adjustment* are accurate, complete, and current as of *August 23rd, 2009.*" *Id.* at 170,612 (explanatory notes omitted). Relying on the GSA Board's decision in *SAE/Americon-Mid-Atlantic*, which determined that a Certificate of Current Cost or Pricing Data made the second assertion required by the CDA and was therefore not tantamount to the absence of a certification, 94-2 BCA ¶ 26,890 at 133,852, this Board held that the Certificate of Current Cost or Pricing Data "was a defective but correctable CDA certification." *Western Plains Disposal*, 11-1 BCA ¶ 34,617 at 170,613. Our holding in *Western Plains Disposal* compels the same result in this appeal. The DFARS REA certification provided by appellant in this appeal (SOF ¶ 13) makes both the first and second attestations required by 41 U.S.C. § 7103(b)(1). It would be anomalous to hold that a Certificate of Current Cost or Pricing Data is correctable under the CDA, but find appellant's certification uncorrectable where it meets one more prong of a proper CDA certification than the Certificate of Current Cost or Pricing Data. Accordingly, we hold that appellant's DFARS 252.243-7002 REA certification is correctable under 41 U.S.C. § 7103(b)(3).[2]

## CONCLUSION

The government's motion to dismiss for lack of jurisdiction is denied.

Dated: 22 October 2015

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[2] We note that appellant has corrected its defective certification (SOF ¶ 16).

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59843, Appeal of Air Services, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

11