NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**MICROTECHNOLOGIES LLC, DBA MICROTECH,**
*Appellant*

**v.**

**UNITED STATES ATTORNEY GENERAL,**
*Appellee*

_____

2021-2169

_____

Appeal from the Civilian Board of Contract Appeals in No. 6772, Administrative Judge Kyle E. Chadwick, Administrative Judge Allan H. Goodman, Administrative Judge Jerome M. Drummond.

_____

Decided:  July 28, 2022

_____

ZACHARY DAVID PRINCE, Smith, Pachter, McWhorter, PLC, Tysons Corner, VA, argued for appellant.  Also represented by JOSEPH J. PETRILLO.

BRYAN MICHAEL BYRD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellee.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

_____

Before CHEN, SCHALL, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Microtechnologies LLC (MicroTech) appeals the U.S. Civilian Board of Contract Appeals' summary judgment that MicroTech is not entitled to recover costs under the applicable termination clause. Because MicroTech cannot show that the costs it seeks to recover were reasonable charges that resulted from the termination, as required by the parties' contract, we affirm.

## BACKGROUND

### I

On September 25, 2017, MicroTech entered into an agreement with the Executive Office for United States Attorneys (EOUSA or government) pursuant to MicroTech's government-wide acquisition contract for information technology products and services. The agreement, effective September 27, 2017, contemplated that MicroTech would provide the government with perpetual software licenses and software maintenance for Nuix. J.A. 159–64. The agreement's period of performance included one base year (September 29, 2017, to September 28, 2018) and two potential option years (September 29, 2018, to September 28, 2019; and September 29, 2019, to September 28, 2020). J.A. 159–64. The government could exercise one or both of the option years at its discretion. J.A. 163–64. The government agreed that for each option year it exercised, it would pay MicroTech $688,051.80 for software maintenance. J.A. 162.

On September 29, 2017, the first day of the base year of performance, MicroTech purchased the perpetual software licenses and software maintenance not just for the base year, but also for both option years. Purchasing multiple years in bulk reduced the cost of the software licenses and software maintenance. MicroTech "purchased the . . . maintenance for the option[] years at its own risk," "the

risk being that the Government would not exercise those option years." Appellant's Br. 19.

As the end of the base year approached, MicroTech sent multiple emails to the EOUSA contracting officer's representative to inquire whether it would exercise the first option year. J.A. 186–87. On September 28, 2018, the day the base year of performance ended, the EOUSA contracting officer's representative left MicroTech a voicemail stating that the government would not be exercising the first option under the agreement. J.A. 3, 220. MicroTech's financial services manager apparently did not listen to that voicemail until October 1, 2018. J.A. 220, 351. On Sunday, September 30, 2018—two days after the base year of performance ended—MicroTech's financial services manager again emailed, this time contacting EOUSA's Chief of Operations, indicating that MicroTech had not yet heard back regarding the first option year. J.A. 206, 306. Later that day, the EOUSA Chief of Operations, a contracting officer, sent a proposed bilateral contract modification (modification 2), which stated in relevant part: "To exercise option year 1 for Nuix e-Discovery Workstation Perpetual Software License for the period of September 29, 2018, through September 28, 2019, in the amount of $688,051.80." J.A. 2, 189–91, 208. MicroTech signed and returned modification 2 that day at approximately 9:10 PM.

At 8:37 AM the next morning, Monday, October 1, 2018, the assistant director of EOUSA acquisitions staff, also a contracting officer, sent an email informing Micro-Tech that the option year had been erroneously exercised. A proposed modification 3 was attached to this email, which read in relevant part: "The purpose of this modification is to terminate Option Year One. The option year was exercised in error." J.A. 216. MicroTech did not sign this

modification.  The next day, EOUSA sent a signed, unilateral modification terminating the option year.[1]

MicroTech sent a letter to the EOUSA claiming that it owed MicroTech $688,051.50, the price of software maintenance for the first option year, due to the government's termination.   The government denied MicroTech's claim. MicroTech filed an appeal with the Civilian Board of Contract Appeals (Board).

## II

Before the Board, the parties cross-moved for summary judgment regarding whether MicroTech was entitled to its claimed termination costs.  Both parties relied on the applicable termination-for-convenience clause, FAR 52.212-4(l).  That clause reads in relevant part:

> The Government reserves the right to terminate this contract . . . for its sole convenience.  In the event of such termination, the Contractor shall immediately stop all work hereunder . . . . [T]he Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the   satisfaction   of   the   Government  . . .   have

---

[1]    This modification states that it is pursuant to Federal Acquisition Regulation (FAR) 52.249-4, which authorizes the government to terminate non-commercial item contracts for its convenience.  The parties agree that this citation is an error, and that the modification is actually pursuant to FAR 52.212-4(l), the commercial item contracts termination for convenience clause.   Appellant's Br. 16; Appellee's Br. 5–6; *see also* J.A. 29 (FAR 52.212-4(l), "Termination for the Government's convenience" clause, in the parties' original, government-wide acquisition contract).

> resulted from the termination . . . . The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

*Id.*

MicroTech argued to the Board that the cost of software maintenance for option year one was a "reasonable charge" "result[ing] from the termination" that could not "have been avoided." J.A. 3. Specifically, MicroTech alleged that when the government terminated modification 2, Micro-Tech had already incurred the cost for software maintenance for option year one—maintenance it was required to provide by the terms of that modification. J.A. 3–4. And because Nuix only sells software maintenance in one-year increments and it does not refund software maintenance costs once paid, MicroTech argued that it could not have further mitigated its costs. J.A. 4.

In support of its motion, MicroTech provided evidence that Nuix software maintenance could only be purchased in increments of one year and that its purchase of software maintenance was nonrefundable. This evidence included Nuix's Support and Maintenance Service Agreement and a series of declarations from MicroTech's Vice President Chad Cobbs. J.A. 153–54, J.A. 345–48, 404–05, 418–19.

For its part, the government argued that MicroTech could not recover any costs under the applicable termination clause. J.A. 4. The government explained that the termination clause allows for recovery of: (1) the percentage of work done prior to termination plus (2) reasonable charges resulting from termination. The government argued that MicroTech could not recover under the first prong because modification 2 only existed for 12 hours, and MicroTech had not shown it performed any work during that time. J.A. 5. Similarly, the government argued, MicroTech could not recover under the second prong because the cost of software maintenance for option year one could

not be a reasonable charge resulting from termination. *Id.* This was so, according to the government, because Micro-Tech purchased that year of software maintenance on the first day of the base year period of performance—far before modification 2 was entered into, much less terminated. J.A. 4–5.

The Board agreed with the government. MicroTech purchased three years of software maintenance at the beginning of the base year, "with no assurance that the option years would be exercised," the Board noted. J.A. 5. It explained that the cost for the latter two years of software maintenance thus could not have been the "result [of] the issuance of modification 2." J.A. 5. Further, the Board determined that MicroTech had not proven "that the one year of software maintenance at issue that was purchased at the beginning of the base year was required under the contract when purchased." J.A. 6. The Board also determined there "is no evidence that [MicroTech] took action to activate or apply the software maintenance upon receipt of modification 2, or during the approximately twelve-hour period" during which modification 2 was valid, which "would have resulted in [MicroTech] supplying the software maintenance to the Government pursuant to modification 2." J.A. 6. The Board thus determined that MicroTech was not entitled to termination costs under FAR 52.212-4(l) as a matter of law and accordingly granted summary judgment in the government's favor.

MicroTech appeals. We have jurisdiction under 41 U.S.C. § 7107(a)(1)(A).

DISCUSSION

We review Board decisions under 41 U.S.C. § 7107. We review the Board's conclusions of law de novo, including its grant of summary judgment. § 7107(b)(1); *see also Rex Sys., Inc. v. Cohen*, 224 F.3d 1367, 1371 (Fed. Cir. 2000). Summary judgment may only be granted if the moving party shows that there is no genuine dispute regarding any

material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating a summary judgment motion, we must resolve all reasonable factual inferences in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

On appeal, MicroTech asserts that it was immediately obligated to provide software maintenance when modification 2 was signed (i.e., at 9:10 PM on Sunday evening). As a result, MicroTech argues, its purchase of software maintenance for option year one—a purchase it made a year beforehand—was a "reasonable charge[]" that "resulted from the termination" under FAR 52.212-4(l). Appellant's Br. 15–19. In other words, MicroTech contends that the government's liability for the cost of software maintenance for option year one was immediately triggered upon the signing of modification 2, despite MicroTech having incurred that charge one year prior. *Id.* at 19.

The Board disagreed. It reasoned that, among other things, MicroTech failed to prove "that the one year of software maintenance at issue that was purchased at the beginning of the base year was required under the contract when purchased." J.A. 6. Accordingly, the Board determined that MicroTech "ha[d] not proved that the software maintenance at issue was supplied to the [g]overnment under modification 2," and therefore the cost of that maintenance was "not a cost arising from the termination of modification 2." *Id.*

When properly resolving all reasonable factual inferences in MicroTech's favor, we agree with MicroTech that Nuix software maintenance can only be purchased in one-year increments and that MicroTech's purchase of software maintenance for option year one was nonrefundable. *See* J.A. 345 (Cobbs Decl. ¶ 2) ("Nuix does not sell [] software maintenance . . . for a period of less than one year."); J.A. 348; J.A. 153 ¶ 2 (explaining that fees paid to Nuix are "non-refundable once paid").

Nonetheless, we conclude that the Board did not err in granting summary judgment that MicroTech is not entitled to recover costs under the applicable termination clause. The Board correctly held that the cost of software maintenance for option year one was not a "reasonable charge[]" that "resulted from the termination," as required for recovery under FAR 52.212-4(l). MicroTech incurred the cost for software maintenance for option year one at the beginning of the base year period of performance—well before modification 2 was signed and then terminated. Indeed, Micro-Tech itself acknowledges that the cost was not required under any contract when it was incurred. Appellant's Br. 19 (MicroTech conceding that it "understood that it purchased the . . . maintenance for the option[] years at its own risk"). Accordingly, even assuming that the software maintenance could only be purchased in one-year increments and that MicroTech's purchase was nonrefundable, MicroTech cannot show that the cost of software maintenance for the first option year "resulted from" the government's termination of modification 2. Thus, under the specific, undisputed facts in this case, the Board correctly entered summary judgment in the government's favor.

## CONCLUSION

We have considered MicroTech's remaining arguments but do not find them persuasive. For the foregoing reasons, we affirm the Board's summary judgment.

**AFFIRMED**